Meserole Securities Co., Inc., Respondent, *v.* Jack
T. Cosman, Defendant, and National Evans Motion
Picture Film Laboratories, Inc., et al., Appellants.

(Argued November 26, 1929; decided February 11, 1930.)

*Louis J. Rosett* and *Solomon C. Stember* for appellants. The plaintiff discounted the notes in suit. (*Morris* v. *Third Nat. Bank*, 142 Fed. Rep. 25; *Youngblood* v. *Birmingham Trust Co.*, 95 Ala. 521; *Metcalf* v. *Morse Iron Works*, 84 N. Y. Supp. 582; *Farmers & Mechanics Bank* v. *Baldwin*, 23 Minn. 198; *New York State Loan & Trust Co.* v. *Helmar*, 77 N. Y. 64; *Nicholson* v. *National Bank of Newcastle*, 92 Ky. 251; *First Nat. Bank* v. *Sherburne*, 14 Ill. App. 566.) The act of discounting violates the statutes in such case made and provided. By reason thereof the notes in suit are absolutely void and the plaintiff is precluded from maintaining the present suit on these notes. (*Curtis* v. *Leavitt*, 15 N. Y. 9; *Pratt* v. *Short*, 79 N. Y. 436; *Matter of Tilden*, 98 N. Y. 438; *New York State Loan & Trust Co.* v. *Helmar*, 77 N. Y. 64; *People* v. *Brewster*, 4 Wend. 498; *Orinoco Realty Co.* v. *Bandler*, 233 N. Y. 24; *People ex rel. Outwater* v. *Green*, 56 N. Y. 466.) The notes in suit are absolutely void under former section 22 (now section 18) of the General Corporation Law, and the plaintiff is precluded from maintaining its suit on these notes by virtue of that provision alone. (*Pratt* v. *Short*, 79 N. Y. 436; *Crocker* v. *Whitney*, 71 N. Y. 161; *Bath Gas Light Co.* v. *Claffy*, 151 N. Y. 24.)

*Louis Rosenberg* for respondent. Section 140 of the Banking Law does not prohibit discounting by a corporation because not organized under the Banking Law. (*De Graff* v. *American Linen Thread Co.,* 21 N. Y. 124; *Williams* v. *Western Union Telegraph Co.,* 9 Abb. N. C. 443; *People* v. *Brewster,* 4 Wend. 497; *People* v. *Cohen,* 94 Misc. Rep. 355; *People* v. *Draper,* 169 App. Div. 479; *People* v. *Duplan,* 208 App. Div. 435; *Willett* v. *Schiff,* 208 App. Div. 616; *People* v. *Gates,* 56 N. Y. 387; *Seligman* v. *Friedlander,* 199 N. Y. 373; *Matter of Meyer,* 209 N. Y. 389; *Matter of Brooklyn Elevated R. R. Co.,* 125 N. Y. 434; *People ex rel. Wood* v. *Lacombe,* 99 N. Y. 49; *Chicago, M. & St. P. R. R. Co.* v. *Voelker,* 129 Fed. Rep. 522; *Curtis* v. *Leavitt,* 15 N. Y. 9; *New York State Loan & Trust Co.* v. *Helmar,* 77 N. Y. 64; *Pratt* v. *Short,* 79 N. Y. 437.) Neither section 22 of the General Corporation Law nor section 5 of the Stock Corporation Law prohibits discounting by a non-banking corporation. (*National Park Bank* v. *Koehler,* 204 N. Y. 174; *Union Trust Co.* v. *McCrum,* 145 App. Div. 409; 207 N. Y. 721; *Bissell* v. *Michigan R. R. Co.,* 22 N. Y. 258; *Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 159; *Little* v. *Garabant,* 90 Hun, 404; 153 N. Y. 661; *Whitney* v. *Barlow,* 63 N. Y. 63; *Parish* v. *Wheeler,* 22 N. Y. 494; *Nassau Bank* v. *Jones,* 95 N. Y. 115; *Rider Life Raft Co.* v. *Roach,* 97 N. Y. 378; *Appleton* v. *Citizens Central Nat. Bank,* 19 N. Y. 417.)

LEHMAN, J. The plaintiff is a corporation organized under the Business Corporations Law of the State of New York (Cons. Laws, ch. 4). Its certificate of incorporation purports to authorize it " to loan money secured by personal property or real estate, to purchase, hold, own, sell, assign, deal in, pledge and otherwise dispose of shares of capital stock, bonds, mortgage debentures, notes and other securities, obligations, contracts and evidences of indebtedness of corporations of the State of New York or any

other State of the Union." The defendant National Evans Motion Picture Film Laboratories delivered to the plaintiff before maturity the two notes in suit. Each note is for the sum of $4,400 payable six months after date with interest from date at the rate of six per cent per annum. They are made by " Bischoff, Incorporated " to the order of J. T. Cosman, and at the time of delivery to the plaintiff the said notes were indorsed by all the defendants. At that time the plaintiff paid to said defendant National Evans Motion Picture Film Laboratories the sum of $4,000 on each note. The plaintiff, according to the stipulation of the parties, " engaged among other of its transactions in numerous transactions of the same nature and of the same legal effect as the transaction at bar."

There is nothing in the record to show that these notes did not have a legal inception before they were delivered to the plaintiff. If the plaintiff were not a corporation, then unquestionably the defendant-appellants would be liable in this action as indorsers. They deny liability on the ground that the plaintiff is a corporation and is not authorized by the law of the State of New York to discount notes, and that under section 140 of the Banking Law (Cons. Laws, ch. 2) it is prohibited from " making discounts " and all notes made or given to a corporation, other than a bank, for discount are void.

Doubtless the policy of the State of New York embodied in its statutes restricts corporations not organized under the Banking Law and not subject to the supervision of the Banking Department from engaging in any form of banking. In section 2 of the Banking Law it has defined banks to mean " any domestic moneyed corporation, other than a trust company, authorized to discount and negotiate promissory notes, drafts, bills of exchange and other evidences of debt; to receive deposits of money and commercial paper; to lend money on real or personal

security; and to buy and sell gold and silver bullion, foreign coins or bills of exchange." Banks possess the totality of these powers. Other corporations may possess some of them, and the Banking Law provides for the incorporation of moneyed corporations which are not banks though they may possess some banking powers and engage in some forms of banking.

It does not follow from the fact that banks possess these enumerated powers that every exercise of such powers is a form of banking. Business corporations at times lend money on real and personal security without in any form conducting a banking business. So, too, the negotiation of bills of exchange, the purchase of foreign coins or bills of exchange, may be an incident of a commercial business. The Legislature has, of course, not attempted to forbid business corporations from exercising any of these powers occasionally and incidentally to a commercial business, but it has provided that no corporation shall by any implication or construction be deemed to possess the power to *carry on a business* which constitutes a *form* of banking business (General Corporation Law, § 22, now § 18; Cons. Laws, ch. 23) and it has fortified the effect of the restriction contained in that statute by express prohibition against certain banking operations. (Banking Law, § 140.)

The language of section 22 (now section 18 of the General Corporation Law) is significant. " Prohibition of banking powers. No corporation, domestic or foreign, other than a corporation formed under or subject to the banking laws of this State or of the United States, and except as therein provided shall by any implication or construction be deemed to possess the power of carrying on the business of discounting bills, notes or other evidences of debt, of receiving deposits, of buying and selling bills of exchange, or of issuing bills, notes or other evidences of debt for circulation as money, or of engaging in any other form of banking."

In our search for the legislative intent, we may not disregard either the similarities or the differences between the powers which banks are authorized to exercise under section 2 of the Banking Law, and the powers denied to other corporations, except as expressly permitted by that law. Not only the totality of banking powers is denied to corporations organized under other laws, but no such corporation is authorized to carry on the business of exercising any of these powers and which constitutes any form of banking. Discounting bills, notes or other evidences of debt is a form of banking carried on by banks of discount. Issuing bills, notes or other evidences of debt; receiving deposits, buying and selling bills of exchange; issuing bills, notes or other evidences of debt for circulation as money, are other forms of banking. Business corporations are not authorized to encroach upon the field of banking operation in any form. Specific enumeration of particular forms of banking is supplemented by a restriction against engaging in any *other* form of banking.

The general restriction against any *other* form of banking not only amplifies but characterizes the specific restrictions. It forms a guidepost to the legislative intent, made more conspicuous by the title of the section "Prohibition of *banking powers*." The powers conferred upon banks are, of course, banking powers when exercised in a banking operation; they may be ordinary business powers when exercised in connection with a business operation of other nature. Business corporations are not authorized to exercise banking powers, but the legislative restrictions must be read in their context and construed in their natural sense, and may not by forced construction be given an application broader than their purpose.

It is argued that obviously a corporation " other than a corporation formed under or subject to the banking laws of this State " illegally engages in a " form of banking " when it habitually exerts a power confided

to a bank organized under the Banking Law. That can be true only if the power has been confided solely to banks and its exercise constitutes a banking operation. (See *Chase & Baker Co.* v. *National Trust & Credit Co.*, 215 Fed. Rep. 633.) Under section 2 and section 106 of the Banking Law some powers are conferred upon banks which, in some form, individuals and corporations customarily exercise in operations which clearly are not banking operations. We may cite an extreme example: Banks receive deposits of money payable on demand. That undoubtedly constitutes a form of banking. Dry goods stores at times receive deposits of money, similarly payable on demand. The purpose of the store may be to enable customers to charge purchases against these accounts, yet the operation of receiving moneys on deposit by a dry goods store is so closely analogous to the business of receiving deposits by a bank that it may reasonably be said to constitute a banking operation. On the other hand, some dry goods stores customarily demand and receive deposits of money from customers to be applied on purchases where either delivery or payment is postponed. Sometimes, indeed, merchants customarily receive deposits as evidence of good faith before a contract or sale is made. Certainly in such cases it may hardly be said that even habitual receiving of deposits of money constitutes a form of banking.

At times business corporations even " discount " commercial paper of their customers as a regular and customary part of a commercial business. Factors, as part of their business of selling on commission goods consigned to them, customarily agree to make advances of moneys to the consignors before the goods are sold and paid for in cash. At times such agreements require the advances to be made by " discount " of notes or drafts either made by the consignor or received in payment of goods. Certainly the commercial world would be somewhat astonished to learn that such ordinary commercial practices

are prohibited and that the discounted notes are void because the factor in advancing moneys to a consignee by "discount" of commercial paper engaged in a prohibited form of banking.

Perhaps we may find in the variations of language in the descriptions of powers confided to banks under the Banking Law and the description of the powers withheld from other corporations under the General Corporation Law further evidence that the Legislature did not intend that in all cases the habitual exercise of a power confided to a bank shall constitute illegally engaging in a form of banking. Section 2 of the Banking Law authorizes banks to loan money on real and personal property. Certainly this constitutes a customary form of banking, yet there is no express restriction upon the power of a business corporation to engage in the business of loaning money, and no implied prohibition except where such business is carried on as a "form of banking" and not merely as a part or incident of a commercial business. So, too, the enumeration of powers which corporations may not exercise, as a business, does not include the power to buy and sell gold and silver bullion or foreign coins. Indeed, though a bank is authorized "to discount and negotiate" notes, yet there is no express provision excluding business corporations from the business of "negotiating" notes, except in so far as "negotiation" may be synonymous with or included in the term "discount." The Legislature by its disjunctive enumeration of banking powers which a corporation other than a bank may not exercise as a business, has unequivocally indicated that the statute applies even where a corporation assumes to exercise a single one of the enumerated powers. None the less, the juxtaposition of the enumerated banking powers and the term "other form of banking" indicates with scarcely less clearness that the Legislature did not intend that any definition of the enumerated powers should extend the application of the

statute beyond the banking field. We must determine specifically whether the Legislature in using the word " discount " either in the restrictive provisions of the General Corporation Law or in the prohibitory provisions of section 140 of the Banking Law intended to include the purchase at less than its face value of an existing note, payable thereafter, with interest till the date of payment, by a corporation which engaged in numerous transactions of the same nature but otherwise exercised none of the powers enumerated in section 22 (now section 18 of the General Corporation Law).

In *Tracy* v. *Talmage* (18 Barb. 456) it was said that " ' to discount ' includes ' to buy;' for discounting, in most cases, is but another term for ' buying at a discount.' " Undoubtedly definitions of the word " discount " by lexicographers and economists may be found wide enough to cover every purchase of a debt or chose in action, yet in banking or finance it seems to have a meaning somewhat more restricted. Banks are not ordinarily permitted to speculate in the purchase of negotiable instruments made or indorsed by parties of doubtful financial responsibility. Banks of discount loan or advance moneys to the makers or holders of negotiable instruments, receiving at that time, by deduction from the sum loaned or advanced, the interest or compensation to be paid for the advance of the bank's money. (See Jevons Prim. Pol. Econ. 114.)

Ordinarily perhaps the advance or loan is made by discount of negotiable paper created for that purpose and having no legal inception until delivered for discount. Sometimes the loan or advance is made to the maker, sometimes to an indorser, where the maker has signed the note for the accommodation of the borrower. If a bank loans or advances moneys to a customer upon an existing note indorsed by the customer upon deducting interest to the date when the note becomes due, the transaction may in form be a purchase of the note; for most practical

purposes the transaction is the same as if the moneys advanced formed the consideration for the making of the note.

It has been authoritatively decided by this court that the power of a bank to discount notes *includes* the power to purchase existing notes at a discount from note brokers. (*Atlantic State Bank* v. *Savery*, 82 N. Y. 291.) There the question before the court concerned only the extent of the powers expressly or impliedly granted to banks organized under the Banking Law. There was no statutory *prohibition* against the purchase of negotiable instruments by banks, and the court decided only that in such case the *grant* of powers should not be narrowly construed. Indeed, the court pointed out that " If the statute contained words of prohibition, a different question would arise and the cases cited by the appellant (*Bank of U. S.* v. *Davis*, 2 Hill, 451; *N. Y. State L. & Trust Co.* v. *Helmer*, 77 N. Y. 64) would apply."

Obviously a decision that the power of a bank to " discount " notes includes the power to purchase notes at a price determined by the deduction of interest in advance from the face value of the note cannot be an authoritative determination that a similar purchase at a discount by a business corporation constitutes an exercise of a banking power or engaging in a form of banking. The distinction must always be borne in mind between the exercise in a commercial transaction of a power confided to a bank, and engaging in a form of banking.

This court has not, in the past, been oblivious to this distinction. In the case of *New York State Loan & Trust Co.* v. *Helmer* (77 N. Y. 64, cited in *Atlantic State Bank* v. *Savery, supra,* with approval) the court held that a moneyed corporation chartered by special act of the Legislature to engage in some, but not all, forms of banking might not discount notes in the same manner as banks of discount might do. In some respects the question presented was similar to the question before us.

Differences in the facts, however, require opposite conclusion. In that case the plaintiff had power under its charter to grant, bargain, buy or sell real and personal property. In the present case the plaintiff's charter in clearer terms purports to grant power " to hold, own, sell, assign, deal in, pledge and otherwise dispose of * * * notes and other securities, obligations, contracts and evidences of indebtedness of corporations of the State of New York or any other State of the Union." Such distinction is, however, not important, because in both cases the court must consider the effect of an express prohibitory statute against " making discounts."

At this point it may be well to examine the prohibitory statute now in force; for the prohibitory statute and the restrictive statutes together form, as we have already pointed out, the statutory embodiment of the public policy of the State to exclude corporations not organized under the Banking Law from engaging in any form of banking. It provides in part: " No corporation, domestic or foreign, other than a national bank or a federal reserve bank, unless expressly authorized by the laws of this State, shall employ any part of its property, or be in any way interested in any fund which shall be employed for the purpose of receiving deposits, making discounts, or issuing notes or other evidences of debt to be loaned or put into circulation as money. All notes and other securities for the payment of any money or the delivery of any property, made or given to any such association, institution or company, or made or given to secure the payment of any money loaned or discounted by any corporation or its officers, contrary to the provisions of this section shall be void." (Banking Law, § 140.) At the time the earlier case was decided a statute was in force, similar in all respects, except that at that time there was no comma after the words " making discounts " in the first sentence. (See Part 1, ch. 20, title 20, § 3; 1 Statutes at Large [Edm. ed., R. S.], p. 661.)

The court in the earlier case pointed out clearly the purpose of the statutes. " These enactments are certainly very explicit, and in connection with others, some of which provide for the infliction of penalties for a violation of different provisions of the act, indicate quite clearly a settled policy of the Legislature to prevent corporations which are not formed for banking business from carrying on or in any way interfering with the same." (*New York State Loan & Trust Co.* v. *Helmer, supra,* at p. 69.)

In that case the court pointed out that the records showed that " the plaintiff kept a regular office for discount and deposit, carried on a regular banking business, discounted promissory notes and other commercial paper, bought and sold a large amount of exchange, received a large amount of deposits, and paid the same on the checks of depositors, and, in fact, did the ordinary business of a bank of discount and deposit." It further appeared that " the proceeds of the notes in question were credited upon the books of the plaintiff to the defendant, Bowen." These facts, absent in the present case, dictated the decision of the court.

In deciding that under the facts of that case the banking corporation had " made discount " in manner prohibited by the statute, the court left no room for doubt as to the basis and scope of its decision.

" Upon the facts alleged, the question to be determined is whether the plaintiff possesses authority, under its charter, to discount notes, the same as any other banking institution, credit the proceeds, and pay out the same upon the checks of one of the parties; and not whether the plaintiff can lawfully buy and receive promissory notes and advance moneys upon the same. There is a plain distinction between the two cases; and having that distinction in view, it is quite apparent that the plaintiff exceeded its powers in discounting the notes in question, and violated the provisions of its charter and the laws of this State passed to restrain illegal banking."

Having that same distinction in view, it would seem that upon the facts the present case falls clearly upon the other side of the line of demarcation. Here it is not claimed that the plaintiff corporation maintained a regular office for discount and deposit or carried on a regular banking business or received deposits and paid out moneys on checks. It is the function of a bank of discount to employ its funds in the form of loans or advances to its customers, receiving compensation in the form of interest upon the moneys loaned or advanced. Such loans or advances are made upon the credit of the customers, either with or without the credit of other parties in addition. If it makes such a loan or advance in the form of a discount of a bill or note, payable at a future date, it pays to the maker or holder the face amount of the instrument after deducting interest for the use of the money till the date when the instrument is payable. Where such payment by the bank constitutes the consideration for the execution of the bill or note, the transaction is, both in form and in fact, a loan. Where such payment is the consideration for the transfer of a pre-existing instrument the transaction is in form a purchase; yet in both cases the transaction carried on by the bank is part of its function to loan or advance moneys to its customers, deriving its profit ·from the receipt of interest in advance.

On the other hand, it is the function of a business corporation to employ its capital in its own business. The plaintiff corporation was not engaged in the business of loaning or advancing moneys to its customers, deducting interest in advance. It was engaged in the business of purchasing notes at less than their face value, apparently as a speculation. It did not in this case deduct interest in advance. The notes were in fact payable with interest and the purchaser, under their terms, was to receive that interest at the date when the notes were payable. The plaintiff made a trading bargain in order to reap a

trading profit, in no manner measured by any rate of interest for use of the money. It maintained no office to which its customers might repair to obtain a loan or advance of moneys at interest, though, perhaps, it maintained an office at which customers might sell notes which the plaintiff in the course of its business might choose to buy.

Technically the discount of the note in *New York State Loan & Trust Co.* v. *Helmer* (*supra*) may also have been a purchase, but it was a purchase made by a corporation engaged in a form of banking for the purpose of advancing money to a customer upon interest deducted in advance. The court, indeed, regarded it as if a loan, and in its opinion characterized the prohibited transaction as " a loan of money obtained upon a promissory note by discount of the same to the maker or holder."

The same considerations dictated a like decision in *Pratt* v. *Short* (79 N. Y. 437), much relied upon by the appellants. There again an institution endowed by charter from the Legislature with power to engage in some forms of banking, but not the power to discount notes, advanced money to a customer upon the purchase or discount of a note held by the customer and indorsed by him. Technically the transaction was not a loan though the court so regarded it.

An examination of the record on appeal reveals, even more clearly than the opinion, the facts upon which the court based its decision. The record is meagre, but it was admitted as a fact that the " note was discounted by the said People's Safe Deposit and Savings Institution at the *banking office* of said company in Syracuse and the money proceeds of said note less the discount was paid by said bank at its counter to the said defendant in the *ordinary way that a bank of discount and deposit discounts short paper.*" (Italics are ours.) Again it appears that the parties and the court by common consent considered that the discount was in fact a loan. The briefs of the

parties, as well as the opinion of the court, so characterized it. Though the court decided that the transaction constituted a prohibited form of banking and that the note was void when received by the banking institution, it allowed a recovery against the customer for money loaned. A resolution of the board of directors of the corporation was introduced in evidence, " That all discounts of promissory notes made at the Syracuse office of the institution by Patrick Lynch are hereby sanctioned and approved by this Board and said Lynch is fully empowered and authorized by this Board of Directors to *discount and loan the* funds of the Syracuse office on such promissory notes and securities as he may deem fit." Finally, there is a finding " that immediately or very soon thereafter [*i. e.*, the delivery of the note to the defendants] the defendants indorsed the said note and afterwards and in consideration of and *to secure the payment of the sum of* $1,873.03 *lent and advanced* to said defendants at their request, by the said People's Safe Deposit and Savings Institution; they, said defendants, transferred and delivered the said promissory note to the said institution, receiving therefor the sum of $1,873.03, and they gave the makers of the said note credit for the money they had thus obtained on their indorsement from said institution." In view of these circumstances disclosed by the record, it seems impossible to view the decision in that case as any authority for the view that the purchase of a note at less than its face value by a corporation which habitually engaged in such transactions, but which otherwise carried on no form of banking, is the exercise of a banking power which under the law only banks or corporations, specially authorized by the Legislature, may lawfully exercise.

In no case cited by the parties; or which we have found, has any court of this or any other jurisdiction found that the terms " discount notes " and " purchase or negotiate " notes were coextensive in their application.

In those cases where the courts of this jurisdiction have construed the words " discount notes " in a sense wide enough to include the purchase of a note at less than its face value, the courts were dealing with statutes applicable only to banks or bankers, or the purchase of the notes was made by a bank as an advance to a depositor by payment of the face value of the notes after deducting interest to the date of payment. So in *Nash* v. *White's Bank of Buffalo* (68 N. Y. 396) the court in construing a statute which limited the amount of interest which any *bank or banker* might take or reserve on a " loan or discount made " to seven per cent, held that the words " loan or discount " included a purchase of a note by such bank or banker, though no loan in a technical sense be made. Decision there was based on the fact that the statute plainly was intended to cover all loans or advances made by banks in any form for interest, and special provision was made in the statute for a reasonable charge for collection upon " the purchase, discount or sale " of an instrument payable in another place (Laws of 1870, ch. 163, the substance of which is included in section 114 of the Banking Law). (See, also, *Johnson* v. *National Bank of Gloversville*, 74 N. Y. 329.)

Section 140 of the Banking Law is derived from chapter 236 of the Laws of 1818, enacted pursuant to a message of Governor Clinton, pointing out the dangers of banking inflation. It has existed in its present form since 1828. (1 R. S., ch. 20, tit. 20, § 3, p. 712.) In some respects its language is confused and its punctuation seems casual and varies in different re-enactments of its provisions. Even so, it certainly suggests, if, indeed, it does not expressly provide, that the prohibited " discounts " are the usual discounts of banking institutions made for the purpose of loaning money to their customers. Since that time there has been no suggestion in any case that its prohibitions apply to a purchase of a note by a business corporation not

conducting a banking business nor loaning or advancing money at interest to banking customers. Now after the lapse of more than one hundred years we are asked to give it an application broad enough to bring within the reach of its drastic provisions other transactions, certainly not within its spirit, even if it could possibly be said that they fall within its letter. If wherever a business corporation receives deposits or " makes discounts," it performs a prohibited act, and all notes made or given for such purpose are void, then for one hundred years factors and other merchants have unsuspectingly broken the law and have enforced, without question, notes which were void.

Many instances may be found in the Banking Law and other statutes where the Legislature has used the terms " purchase " or " negotiate " notes or evidences of debt in a sense not coextensive with " discount." Indeed, it is significant that in section 2 of the Banking Law, cited above, the Legislature has defined a bank as a moneyed corporation " authorized to discount and *negotiate* promissory notes," yet it has not expressly restricted the power of a business corporation organized under the General Corporation Law to carry on the business of " negotiating " promissory notes, nor expressly prohibited under the Banking Law the purchase or negotiation of notes or other evidences of debt. By chapters 326 and 327 of the Laws of 1929 the Legislature has unmistakably evidenced the intention that at least in the future stock corporations may purchase, hold and dispose of notes or choses in action of persons or corporations and that such business is not confined to corporations organized under the Banking Law. Though such statutes cannot be given a retroactive effect, they may be considered as a legislative declaration that our interpretation of the earlier statutes is not contrary to the public policy of the State.

For these reasons it seems clear that under a reasonable

construction of the relevant statutes business corporations may not encroach upon the field of banking occupied by banks of discount by "making discounts" even though they perform no other banking function; yet they are not restrained or prohibited from purchasing notes at a discount where such purchase is not a mere device for carrying on the business of advancing or loaning money at interest, a form of banking customarily conducted by banks of discount, but is in fact as well as in form a commercial transaction of bargain and sale. There may be times when it is difficult to draw the line. Here the line seems clear.

The order of the Appellate Division should be affirmed and judgment absolute ordered against appellant on the stipulation, with costs in all courts.

KELLOGG, J. (dissenting). The plaintiff purchased two promissory notes, aggregating $8,800, which were made by Bischoff, Incorporated, and were payable to the defendant Jack T. Cosman. The notes bore the indorsement of Cosman, the defendants Tom Evans, Mark M. Dintenfass and National Evans Motion Ficture Film Laboratories. The last named defendant transferred the notes to the plaintiff and received therefor the sum of $8,000. Default in payment of the notes at maturity was made, and this action was brought against the indorsers to recover the balance due and payable thereon. The defendants resisted payment on the ground that the plaintiff, having been organized as a business corporation and not as a bank, was not authorized to purchase or discount the notes, and that the notes in its hands, under section 140 of the Banking Law, were void and uncollectible.

On the trial it was stipulated that the plaintiff was incorporated pursuant to the provisions of the Business Corporations Law, now the Stock Corporation Law; that the purposes of its organization, as expressed in its

certificate of incorporation, were these: " To loan money secured by mortgage on personal property or real estate, to purchase, hold, own, sell, assign, deal in, pledge and otherwise dispose of shares of capital stock, bonds, mortgages, debentures, notes and other securities, obligations, contracts, and evidences of indebtedness of corporations of the State of New York or any other State of the Union." It was further stipulated " that the plaintiff at the present time is engaged in and that prior and subsequent to and coincident with the transaction at bar the plaintiff engaged, among other of its transactions, in numerous transactions of the same nature and of the same legal effect as the transaction at bar." It thus appears, not only that the plaintiff was organized for the purpose, among others, of buying notes, but that it has, in pursuit of that corporate purpose, on various occasions made such purchases, paying to the selling indorsers sums of money less than the face value of the notes. The conclusion follows that the plaintiff was engaged in the business of buying notes at less than face value, and that, in the conduct of such a business, it bought the notes in suit.

It is provided in section 18 (formerly section 22) of the General Corporation Law that no corporation, " other than a corporation formed under or subject to the banking laws of this State or of the United States," shall " by any implication or construction be deemed to possess the power of carrying on the business of discounting bills, notes or other evidences of debt, of receiving deposits, of buying and selling bills of exchange, or of issuing bills, notes or other evidences of debt for circulation as money, or of engaging in any other form of banking." It is said that, under this provision, there is denied to a business corporation the possession of the four enumerated powers in combination, but not the possession singly of any one of the powers. Under this interpretation, if the certificate of incorporation of a

business corporation were drawn to sanction its exercise of the powers of discounting bills and notes, receiving deposits, and buying and selling bills of exchange, without specifying the power of issuing bills to pass current as money, the corporation might carry on a business quite characteristic of banking and be wholly free from supervision or control by the State Banking Department. It is unthinkable that the Legislature intended to permit a business corporation to exercise such powers. That it did not so intend is shown by its use of the disjunctive " or " rather than the conjunctive " and " as a connective for the several clauses of the quoted provision. The implication is clear that a corporation, other than a banking corporation, may not exercise any one of the powers enumerated in the provision. It may not carry on the business of " discounting bills, notes or other evidences of debt;" it is prohibited from " engaging in any other form of banking." Consequently, if the plaintiff, in carrying on the business of buying and selling notes, has engaged itself in " discounting " or any other form of banking, its actions have been unauthorized, notwithstanding the terms of its certificate, and its purchase of the notes in suit was an illegal act.

Obviously a corporation, " other than a corporation formed under or subject to the banking laws of this state," illegally engages in a " form of banking " when it habitually exerts a power confided to a bank organized under the banking laws. Such a bank is defined, in section 2 of the Banking Law, as follows: " The term, ' bank,' when used in this chapter, unless a different meaning appears from the context, means any domestic moneyed corporation, other than a trust company, authorized to discount and negotiate promissory notes, drafts, bills of exchange and other evidences of debt; to receive deposits of money and commercial paper; to lend money on real or personal security; and to buy and sell gold and silver bullion, foreign coins or bills of

exchange." By section 106 a bank is empowered to exercise " all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion, and by lending money on real or personal security."

In *Atlantic State Bank* v. *Savery* (82 N. Y. 291) the question was whether the plaintiff, organized as a bank under chapter 260 of the Laws of 1838, was empowered to buy the promissory notes in suit. Under section 18 of the act it was empowered " to carry on the business of banking, by discounting bills, notes and other evidences of debt; by receiving deposits; by buying and selling gold and silver bullion, foreign coins and bills of exchange, in the manner specified in their articles of associations for the purposes authorized by this act; by loaning money on real and personal security; and by exercising such incidental powers as shall be necessary to carry on such business." It was held that the plaintiff, in buying the notes in suit, lawfully exercised the statutory power of " discounting bills, notes and other evidences of debt." The court quoted with approval the statement that " to buy or purchase a debt is always in commerce termed to discount it," made in MacLeod on Banking (at p. 43); and the statement made in *Tracy* v. *Talmage* (18 Barb. 456), as follows: " Now, ' to discount ' includes ' to buy;' for discounting, in most cases, is but another term for ' buying at a discount.' " It is noticeable that the statute under consideration did not expressly confer upon banks, as does our statute, the power " to negotiate " as well as " to discount " promissory notes. There is authority to the effect that " to negotiate " means not only " to transfer or assign (as a bill, etc.) to another " but " to obtain or give value for (bills, cheques, etc.) in money." (Oxford Dictionary.) In construing a statute similar to ours, the Supreme Court of Illinois, in the

case of *First National Bank of Greenville* v. *Sherburne* (14 Ill. App. 566) has suggested that to " negotiate " means not only to sell but to buy. However that may be, the decision in *Atlantic State Bank* v. *Savery* (*supra*) is clear authority to the effect that a bank authorized " to discount " promissory notes is necessarily empowered " to buy " them. Under this authority, therefore, it is clear that the plaintiff, in buying the notes in suit, according to its practice, was engaged in a form of banking which it was prohibited from exercising by section 18 of the General Corporation Law. The purchase was, therefore, illegal. Whether the notes were void and uncollectible is another question.

It is provided in section 140 of the Banking Law that no corporation, other than a banking corporation, " shall employ any part of its property, or be in any way interested in any fund which shall be employed for the purpose of receiving deposits, making discounts, or issuing notes or other evidences of debt to be loaned or put into circulation as money." Again, the disjunctive " or " is used to connect the prohibitory clauses. The enumerated powers, thus forbidden to business corporations, are the precise powers conferred upon banks by sections 2 and 106 of the Banking Law. A bank is permitted to employ its funds in " discounting " commercial paper; other corporations are forbidden to use their funds in making " discounts." Obviously the discounting forbidden and the discounting sanctioned are identical. A bank in the exercise of the " discounting " power may purchase promissory notes. It would seem that a corporation to which making " discounts " is forbidden might never legally buy them. The provision quoted from section 140 is followed by this: " All notes and other securities for the payment of any money or the delivery of any property, made or given to any such association, institution or company, or made or given to secure the payment of any money loaned or discounted by any corporation

or its officers, contrary to the provisions of this section, shall be void." Notes "made or given" to secure "money loaned or discounted," in violation of the section, shall be void. Moneys "discounted," then, are something not comprehended in the expression "moneys loaned;" nor are notes "given" included in the phrase "notes made." The inference is that notes "given" to secure moneys "discounted" are notes which have been purchased, without the creation of an attendant loan. The conclusion is thereby strengthened that a business corporation which makes a business of purchasing notes at a discount violates the section under consideration. If it conducts such business, the notes purchased in the course thereof are void.

In section 114 of the Banking Law a "loan" is distinguished from a "discount." The same distinction appeared in the act of 1870 (Ch. 163), from which the provisions of section 114 were derived. It was there provided that every bank might make a charge of seven per cent "on every loan or discount made;" that if a greater sum were charged and paid, the person paying might recover from the bank twice the amount of the excess payment. The provisions of the act of 1870 were considered in *Nash* v. *White's Bank of Buffalo* (68 N. Y. 396). It had been found that the plaintiff had presented commercial paper to the defendant bank for discount; that he had indorsed and transferred the paper to the defendant; that the defendant had credited the plaintiff on its books with the amounts for which the paper was made or drawn, less an amount charged for discount; that the amount charged in each case was greater than the sum of seven per cent per annum. RAPALLO, J., writing for the court, said: "There was no loan, but an absolute transfer of the paper to the bank." It was held that, since there was no loan, the transaction was not usurious under the general statutes against usury; that nevertheless there had been a discount and the

plaintiff was entitled to a recovery of double the amount thereof. In *Johnson* v. *National Bank of Gloversville* (74 N. Y. 329) a provision of the United States Banking Act, identical with the provisions of the act discussed in *Nash* v. *White's Bank of Buffalo* (*supra*), was considered. Under it a recovery of double the excess discount charged by the defendant in buying commercial paper from the plaintiff was approved. RAPALLO, J., again writing for the court, said of the act of Congress: " It limits the rate of interest to be taken on loans and discounts. If the rate were limited only on loans there might be some plausibility in the argument that the purchase of business paper at a discount did not fall within the limitation. But it distinctly specifies discounts as well as loans, and it is well known that the principal office of banks of discount, is to discount the business paper of their customers." If the association of " discounts " with " loans " was of determinative importance in the case last cited, the association of moneys " discounted " with " moneys loaned " in section 140 of the Banking Law is of equal importance. In any event the two decisions are definite authority to establish the proposition that to purchase a promissory note, at a discount from its face, is " to discount " the note, a thing prohibited to business corporations, the doing of which renders the note void.

In the case of *Pratt* v. *Short* (79 N. Y. 437) the plaintiffs, as assignees of a corporation not organized to do a banking business, sought a recovery from the defendants, who were the indorsers of a promissory note. The note was made payable to the defendants, and represented a debt owed by the maker to them. The note was indorsed by the defendants and transferred to the corporation, which paid the defendants the proceeds of the discount. The plaintiffs declared upon three counts, seeking a recovery upon the note, a recovery for money loaned, and a recovery for money had and received. The

Restraining Act then in force (1 R. S. 712) provided that "no incorporated company, without being authorized by law, shall employ any part of its effects, or be in any way interested in any fund that shall be employed, for the purpose of receiving deposits, making discounts or issuing notes or other evidences of debt, to be loaned or put in circulation as money." The words of the prohibition are identical with the prohibitory words of section 140 of the Banking Law under discussion. The act further provided that all notes or other securities for the payment of money " made or given to secure the payment of any money loaned or discounted by any incorporated company, contrary to the provisions of the third section of this title, shall be void." Identical words are used in section 140. The court held that " the discount by the corporation of the note in question, was unlawful " and that, under the quoted provision of the Restraining Act, the note was void.

While the court denied a recovery upon the note, it permitted the recovery of an amount equal to the sums advanced upon the discount. It is not at all clear that the permitted recovery was for money loaned. Thus, the court said that while " the law will not enforce the prohibited contract, it will take notice of the circumstances, and if justice and equity require a restoration of money or property, received by either party thereunder, it will, and in many cases has given relief." Again it said: " If the defendants avoid their indorsement it is the plainest equity that they shall restore the money which they received on the faith of it." In support of its conclusions the court cited the Utica Insurance Company cases (*Utica Insurance Co.* v. *Kip*, 8 Cow. 20; *Utica Insurance Co.* v. *Cadwell*, 3 Wend. 296; and *Utica Insurance Co.* v. *Bloodgood*, 4 Wend. 652). In each of these cases the notes, with indorsements made for accommodation, were presented by the maker to the plaintiff, and the moneys paid by it were received by the maker.

Manifestly, the notes had no inception, as binding obligations, until presented to the plaintiff, so that the transactions were clearly loans to the makers. It would be quite a different thing to say that on a transfer of a note, embodying a binding obligation of the maker, by the indorser to a person paying money therefor, a loan is made to the indorser. It is noteworthy, also, that in the first case, the court, in support of a recovery of the moneys advanced, quoted 2 Comyn on Contracts, 109, to the effect that the holder of an illegal instrument, received in exchange for moneys advanced, may disregard it, and, " to prevent the defendant from retaining the benefit which he derived from an unlawful act," may have a recovery. The court also cited *Munt* v. *Stokes* (4 Durnford & East Rep. 561, 4 T. R. 561). In that case Lord Kenyon expressed the opinion that a person paying out money on the security of an illegal instrument could maintain " an action for money had and received." The Utica Insurance Company cases were severely criticized in *Tracy* v. *Talmage* (14 N. Y. 162), where the court said: " Recoveries are not had in such cases upon the basis of the *express* contract, which is tainted with illegality; but upon an implied contract, founded upon the moral obligation resting upon the defendant to account for the money or property received." This, it seems to the writer, is the true principle underlying the recovery permitted in *Pratt* v. *Short* (*supra*). The obligation to restore was in *quasi* contract to prevent unjust enrichment; not in assumpsit to repay money loaned.

It is now the rule in this State that where business paper is transferred and indorsed by the payee, or a subsequent indorser thereof, to a third person who makes payment therefor, no new relationship of debtor and creditor is created, and the transaction is not usurious, although the payment made involves a deduction of a greater sum than accrued interest. (*Eastman* v. *Shaw*, 65 N. Y. 522; *Joy* v. *Diefendorf*, 130 N. Y. 6; *Nash* v.

*White's Bank of Buffalo, supra; Johnson* v. *National Bank of Gloversville, supra.*) " The rule which renders void a note in the hands of a third party, who has purchased at a discount greater than the legal interest applies to instruments that have no inception between the parties or which are not intended to be available until discounted." (*Joy* v. *Diefendorf, supra.*) If the note transferred evidences a binding obligation on the part of the maker, the transferor merely sells that obligation, accompanying the sale by a guaranty, implied in his indorsement, that the maker will pay, or in default thereof that the indorser will. No loan to the indorser is involved; no present indebtedness on his part is created. (1 Daniels Neg. Inst. § 768; 2 Parsons Notes & Bills 429, 430; *Nichols* v. *Fearson,* 7 Pet. [U. S.] 103.) In *Nichols* v. *Fearson (supra)* the court said that the cases holding that a transfer by indorsement involved the making of a loan rested upon the theory that an indorsement involved a promise to pay which ordinarily has that significance; that the reasoning was erroneous " for the contract between indorser and indorsee is at best but a conditional or provisional contract; the indorsement of a business note produces a real transfer of interest, and the indorsement may well be regarded in the light of a guarantee against the insolvency of the promisor." In view of the rule, now well established in this State, that a transfer by indorsement for a discount greater than legal interest is not usurious, it necessarily follows that a transferor through his indorsement never becomes a debtor to the transferee. If it be true, therefore, as urged by the respondent, that there is a " discount " only where there is a loan, promissory notes are discounted only in cases where the primary obligors present them to the money lenders, and themselves receive the advances made thereupon. Of course the payee of a note may engage himself generally to make payment of money borrowed, and to secure his promise may indorse and transfer the

note to the lender. Obviously in such an instance, the note is not " discounted;" it is merely deposited. " A banker discounts a bill, as opposed to taking it for collection or as security for advances, when he takes it definitely and at once as transferee for value." (Halsbury, Laws of England, vol. 1, p. 629.) The distinction between a discount and a deposit of bills depends upon the intention to make an absolute transfer, or to enable the transferee to receive the moneys for the transferor; " Indorsement *prima facie* evidence of the former; unless the object of mere deposit is clearly shown." (Headnote: *Twogood, Ex Parte,* 19 Vesey Ch. 228.) If the respondent's argument were to prevail, therefore, business corporations would be subject to the sole restriction that they might not discount notes for the benefit of the primary obligors. They might exercise at will what Judge RAPALLO has termed " the principal office of banks of discount," viz., " to discount the business paper of their customers." The argument ought not to prevail.

The respondent argues that the opinion in *Pratt* v. *Short (supra)* indicates that the court deemed that a loan was involved in the transfer of the note sued upon, and, therefore, a true " discount " had been made. The proof showed that the maker, Alice Van Cleek, gave the note in suit to the payee, H. W. Short & Co., to apply on her account for lumber purchased. It was stipulated " that the note in question was made by Mrs. Van Cleek payable to the order of Henry W. Short & Co., which company consisted of Henry W. Short and George B. Leonard, the defendants in this action, and upon the application of the payees and indorsers Henry W. Short & Co., said note was discounted by the said Peoples' Savings Bank and Safe Deposit Company at the banking office of said company in Syracuse, and the money proceeds of said note less the discount was paid by said bank at its counter to the said defendant in the ordinary way that a bank of discount and deposit discounts short paper." (See

record of case on appeal.) It will be seen that the stipulated facts indicated a transaction which involved no more than the ordinary transfer of business paper for moneys paid. If the court thought that a loan was involved, it must have so considered upon the theory, once obtaining in our courts, that a transferor of a note by indorsing it assumes with the transferee the relationship of debtor and creditor. (*Cobb* v. *Titus*, 10 N. Y. 198, and cases cited.) If this were the basis of the court's opinion, then, upon the same theory, the notes in suit involved equally well the initiation of a loan, and, therefore, a " discount." Certainly no fact distinguishes our case from *Pratt* v. *Short* (*supra*) to indicate in the latter a loan and in the former a mere sale. If there was a loan in either there was a loan in both. We think that in each instance there was a purchase of commercial paper without more, and that such a purchase, though not involving a loan, is nevertheless a " discount " within the prohibition of section 140 of the Banking Law. Accordingly, the notes in suit, like the note in *Pratt* v. *Short* (*supra*), were void and uncollectible.

The order of the Appellate Division should be reversed and the judgment of the Trial Term affirmed, with costs in this court and in the Appellate Division.

Pound, O'Brien and Hubbs, JJ., concur with Lehman, J.; Kellogg, J., dissents in opinion in which Crane, J., concurs; Cardozo, Ch. J., not voting.

Order affirmed, etc.