ISIDORE MILLER, Appellant-Respondent, *v.* DISCOUNT FACTORS, INC., Respondent; DAVID LIPPEL, Appellant, et al., Defendants. (Consolidated Actions.)

First Department, May 10, 1955.

*George Natanson* of counsel (*Jay F. Gordon* with him on the brief; *Harte & Natanson,* attorneys), for appellant-respondent.

*Maxwell H. Goldstein* of counsel (*Schaeffer & Goldstein,* attorneys), for appellant.

*Louis Gruss* of counsel (*Finke, Jacobs & Hirsch*, attorneys), for respondent.

CALLAHAN, J.  On or about February 2, 1953, Philip Freeman Co., Inc., a domestic corporation engaged in business as a jobber of plumbing supplies, desired to borrow $30,000.  It consulted a note broker who suggested that it draw a series of notes to the order of Walter Freeman, the corporation's president, who was to indorse the same.  The broker consulted various money-lenders, including Discount Factors, Inc.  Although Philip Freeman Co. already owed Discount $20,000, the latter agreed to lend $15,000 more on five notes of $3,000 each to be indorsed by Isidore Miller, Walter Freeman's brother-in-law.  Discount and the corporate borrower agreed that there was to be a charge of $675 as a bonus for the loan.  The notes were to bear interest at 6% and were payable over a period from one to five months. It was further agreed that $500 was to be paid to the broker.

These arrangements were carried out, and the five notes drawn as aforesaid were indorsed by Miller and delivered to Discount, which gave two checks totaling $13,825 to the order of Philip Freeman Co., another check for $675 to the order of Walter Freeman, which was indorsed by him and returned to Discount, and a final check for $500 to the order of the broker. The last two checks were approved as to payment by the corporate borrower.

The notes were subsequently sold by Discount to David Lippel. The first three notes were not met by the maker, but Miller paid them when they fell due.  The maker became bankrupt, and Miller refused to pay notes No. 4 and No. 5 on the ground they were illegal and void under section 131 of the Banking Law. Lippel brought suit on the last two notes.  Miller sued to recover back the sums he had paid on the first three notes, claiming that they were paid under mistake of law.  The actions were consolidated.  Upon the trial, the court dismissed Lippel's complaint, holding notes No. 4 and No. 5 illegal and void as a matter of law.  Miller's claim went to the jury to determine whether he paid under mistake of law or voluntarily with knowledge of his rights.  The jury found against Miller and in favor of Discount. Both Lippel and Miller appeal.

The court is agreed that the judgment in Discount's favor against Miller is to be affirmed.  We are not in accord as to the correctness of the trial court's ruling on dismissal of Lippel's complaint.

Discount Factors, Inc., is incorporated under the Stock Corporation Law. It has no banking powers. It conceded upon the trial that it frequently entered into transactions of the present nature. It agreed that the normal pattern of its business was to make loans for which its charges were deducted in advance.

Section 131 of the Banking Law, insofar as material, reads as follows: " 1. * * * No corporation, domestic or foreign, other than a national bank or a federal reserve bank, unless expressly authorized by the laws of this state, shall employ any part of its property, or be in any way interested in any fund which shall be employed for the purpose of receiving deposits, making discounts, receiving for transmission or transmitting money in any manner whatsoever, or issuing notes or other evidences of debt to be loaned or put into circulation as money. All notes and other securities for the payment of any money or the delivery of any property, made or given to any such association, institution or company, or made or given to secure the payment of any money loaned or discounted by any corporation or its officers, contrary to the provisions of this section shall be void."

Section 18 of the General Corporation Law, which also regulates the power of business corporations in respect to exercise of banking powers, must be read in conjunction with the above section. It provides as follows: " No corporation, domestic or foreign, other than a corporation formed under or subject to the banking laws of this state or of the United States, and except as therein provided shall by any implication or construction be deemed to possess the power of carrying on the business of discounting bills, notes or other evidences of debt, of receiving deposits, of buying and selling bills of exchange, or of issuing bills, notes or other evidences of debt for circulation as money, or of engaging in any other form of banking; * * * provided further that engaging in the business of loaning money in this state on bonds, notes or other evidences of indebtedness, secured by deeds of trust or mortgages upon real property or personal property situated in, upon or appurtenant thereto, and/or purchasing of or otherwise acquiring existing bonds, notes or other evidences of indebtedness, deeds of trust or mortgages of or upon such properties, or any interest therein, and the holding of the same, or the endorsing, selling, assigning, transferring or disposing of the same to another corporation, by a domestic business corporation, or by a foreign corporation which has obtained from the secretary of state a certificate authorizing it to transact business in this state, shall not be

deemed or construed to violate any of the provisions of the banking law."

The precise point in the case is whether the nature of the business conducted by Discount Factors, Inc., in respect to the notes in suit constituted the carrying on of a banking business in violation of the above statutes so as to make the notes void. If any phase of the banking business was carried on here, it is apparent that it involved "making discounts" as prohibited by the law. (Banking Law, § 131, subd. 1.)

The meaning and intent of these statutes in restriction and prohibition of "making discounts" was the subject of full and extended discussion in *Meserole Securities Co.* v. *Cosman* (253 N. Y. 130, 133). There it was held that the purchase of notes having a valid inception for less than the face amount of the instruments by a corporation habitually engaging in such transactions, and not incorporated under the banking law, was not a violation of the statutes. The transaction was found to be a purchase or bargain and sale transaction. The court also pointed out that many forms of discounts are not prohibited by the statutes, but only those occurring in transactions having the nature of banking operations. We are now required to determine whether the present transaction involving the taking of notes having no prior valid inception as negotiable instruments until the making of a loan of money by the business corporation, with bonus charges deducted in advance, but no deduction of interest, infringes on the laws that prohibit "making discounts".

A copy of the certificate of incorporation of Discount Factors, Inc., was placed in evidence showing that its powers included:

(a) * * * to purchase, * * * or otherwise acquire, * * * notes, contracts, and all other evidence of indebtedness * * * arising out of the ordering, selling, leasing or other disposition of, or dealing in or with personal property, service, or real property of any kind * * * and to render financial assistance to manufacturers, jobbers, dealers and agents. * * *

(c) To do a general factoring (del credere or otherwise), commission merchants, brokerage and selling agent's business. * * *

(h) To subscribe and to purchase or otherwise acquire, * * * notes and other evidences of indebtedness of any individual, firm, association, corporation, * * *

(m) To have and to exercise all the powers now or hereafter conferred by the Laws of the State of New York upon corporations organized under the laws which this corporation is organized any and all acts amendatory thereof and supplemental thereto. * * *

(p) Nothing herein contained shall be construed as authorizing the corporation to do in the State of New York, any business for which a corporation may be formed under or pursuant to the Banking Law, * * *,

Section 18 of the Stock Corporation Law provides that stock corporations may acquire notes. It thus appears that Discount Factors had the power to make loans in order to lend financial assistance and to acquire notes, provided, at least, it did not make discounts as a banking operation.

We do not have any proof on the record as to the overall activities of Discount Factors showing to what extent, if any, it carries on other activities by way of factoring or otherwise. It is apparent that it maintains an office to conduct its business in New York City, and there is no evidence whatever, nor does there appear to be any claim, that it receives deposits, issues checks, buys or sells exchange, or does any of the other things which banks generally are authorized to do, except possibly the discounting of notes. We think it is a fair appraisal of the record on this appeal to say that Discount's business is the granting of financial assistance to merchants by lending money and taking back notes or buying their paper.

It is to be noted that in making the loans in question, Discount made a flat charge of $675 on a loan of $15,000 repayable at the rate of $3,000 a month over five months. This charge did not appear to be a deduction of interest. The notes bore 6% interest, which was to be collected on maturity of the notes. The $675 was on top of this. The said sum of $675 happens to be $4\frac{1}{2}\%$ of $15,000, but it does not appear to have been computed with reference to the time of the loan or as interest. Ordinary bank discount usually consists of interest at an agreed rate and computed for the period of the loan, but deducted in advance from the sum loaned.

The present transaction differed in several respects from the ordinary bank discount, which ordinarily consists of deductions of interest charges in advance. A New York bank could not charge more than 6% interest, though it would have the right to deduct the same in advance (Banking Law, § 108). Here the interest charges were payable after maturity. A flat bonus was charged in advance, but it is questionable whether such a transaction is to be considered the making of a discount at all. At least, it was not the making of a discount such as might be engaged in by a bank.

We do not intend to hold that merely because the loan here was such a speculative one, or because the lender charged a bonus in addition to interest, the transaction could not involve a discount, if the transaction had involved deducting all charges in advance. It is the combination of circumstances here, the loan

being beyond that possible by a bank, and the fact that there was no deduction of interest in advance, which takes the transaction out of the realm of encroachment on a bank's business and removes the prohibition of the statute.

The grounds indicated for distinction might seem narrow, but the statute is limited to encroachments on banking powers. It is penal in nature and must be strictly construed (*People* v. *Brewster,* 4 Wend. 498).

We are not concerned with the morals or legality of money-lending at high rates. Because the borrower was a corporation, the question of usury is not involved. This lender undoubtedly could have charged as much as it did without making any deductions in advance, and there would be no claim that the transaction involved a discount or was illegal under the present statutes. The lender might have obtained a bond or contract instead of a note and a guarantee instead of an indorsement, and no invalidity would be involved. In fact, the authorities, which hold negotiable instruments void under these statutes, recognize the right of a lender to collect the amount advanced in an action for money loaned, so the principal effect of voiding notes under the present statutes would be to release an indorser.

If finance companies carrying on the present form of business need regulation it is a matter for legislative action. Already the Legislature has seen fit to regulate small personal loans, check cashing, credit unions, licensed lenders, and other branches of money-lending. There seems to be no claim that the present transaction offends any regulatory statute.

Since the decision in the *Meserole* case (253 N. Y. 130, *supra*) several similar cases have reached this court, but all had distinguishing features. In *Siebros Finance Corp.* v. *190 West Fourth St. Realty Corp.* (231 App. Div. 722) a purchase of notes was involved, and the case was controlled by the *Meserole* decision. In *Williams-Dexter Co.* v. *Dowland Realty Corp.* (234 App. Div. 827, affd. 259 N. Y. 581) the instruments involved were secured by a mortgage on real estate, and section 18 of the General Corporation Law expressly excepted such instruments. In *Pennsylvania Factors Corp.* v. *S. Oldman, Inc.* (272 App. Div. 1049) trade acceptances had been purchased by the lender, and we held that there was no violation of the Banking Law so as to render the instruments void.

We recently had an appeal with respect to the second $15,000 borrowed on the present occasion. Another finance company loaned Freeman that sum and took notes with Miller as indorser.

Miller sued to invalidate the notes unpaid. We affirmed an order denying a motion of the finance company for summary judgment. The lender there took the position that the notes had a valid inception and the transaction was a purchase, but we found that factual issues were raised in connection with that claim requiring a trial (*Miller* v. *Kings Mercantile Co.*, 283 App. Div. 699).

The fact that the present transaction involved the making of a loan in connection with which the questioned instruments were issued distinguishes it from the *Meserole* case (253 N. Y. 130, *supra*) and makes it one of first impression as to whether what occurred constituted " making discounts ". While the question is not free from doubt, we find from all the circumstances that the notes should have been enforced and not declared void.

The judgment insofar as appealed from by the defendant Lippel should be reversed, with costs, and judgment directed for Lippel as prayed for in his complaints, and in all other respects the judgment should be affirmed, with costs to the defendant-respondent, Discount Factors, Inc.

PECK, P. J., COHN, BASTOW and BOTEIN, JJ., concur.

Judgment, so far as appealed from by the defendant Lippel, unanimously reversed, with costs, and judgment directed for Lippel as prayed for in his complaints, and in all other respects the judgment is unanimously affirmed, with costs to the defendant-respondent Discount Factors, Inc. Settle order on notice.

Republished decision, May 24, 1955.

Judgment, so far as appealed from by the defendant Lippel, unanimously reversed, with costs, and judgment directed for Lippel as prayed for in his complaints, and in all other respects the judgment is unanimously affirmed, with costs to the defendant-respondent Discount Factors, Inc. Opinion by CALLAHAN, J. Settle order on notice.*

Concur — PECK, P. J., COHN, CALLAHAN, BASTOW and BOTEIN, JJ.

---

* Also printed, *post*, p. 1142. — [REP.