ABRAMS & COMPANY, INC., A CORPORATION OF NEW YORK, PLAINTIFFF-APPELLANT, v. DEWEY'S GARAGE, INC., A CORPORATION OF NEW JERSEY, *ET AL.*, DEFENDANTS-RESPONDENTS AND THIRD-PARTY PLAINTIFFS, v. E. JAY FERDINAND, *ET AL.*, THIRD-PARTY DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued November 16, 1959—Decided December 4, 1959.

Before Judges Goldmann, Conford and Haneman.

*Mr. Walter J. Bilder* argued the cause for appellant (*Messrs. Bilder, Bilder & Freeman,* attorneys).

*Mr. Jerome S. Lieb* argued the cause for respondents (*Messrs. Harkavy & Lieb,* attorneys; *Mr. Lieb,* on the brief).

Per Curiam. Plaintiff brought an action in the County Court to recover the principal, interest and attorney's fee due on three of five promissory notes (the first two are not here involved, having been paid), executed and delivered on September 12, 1957 by defendant Dewey's Garage, Inc. to E. Jay Ferdinand Agency, Inc. The notes were personally endorsed by defendant Dewey LaRose. They were then endorsed to plaintiff in blank by the Ferdinand Agency and its principal officer, E. Jay Ferdinand, under the terms of

an agreement entered into between plaintiff and the Ferdinand Agency on June 11, 1957, hereinafter described.

Following institution of the main suit defendants filed a third-party action against the Ferdinand Agency and Ferdinand personally, claiming that the latter had undertaken to obtain a loan of $6,500 for defendants, and for that sole purpose defendants had executed the notes in blank; that subsequently the third-party defendants represented they could not obtain the desired loan and had destroyed the notes; that the notes had not in fact been destroyed, but had been completed and negotiated by the third-party defendants to plaintiff; and that by reason of this fraud the defendants were entitled to indemnification and reimbursement should plaintiff succeed in its main suit. The parties agreed below, as they do here, that the legality of the transaction is to be determined under the laws of the State of New York, where the notes were delivered.

The County Court judge, sitting without a jury, initially found in favor of plaintiff and against defendants on each of their three defenses. He held that (1) the transaction was not a loan under the banking laws of New York, so as to be absolutely void, but a discount or purchase of the notes; (2) there was no action on plaintiff's part to circumvent the usury laws of New York; and (3) plaintiff was a *bona fide* holder in due course, so that the defense of fraud could not be invoked against it. Judgment for plaintiff was accordingly entered in the main case, and in favor of Dewey's Garage, Inc. and LaRose in the third-party action.

The court subsequently gave defendants special leave to make an application to set the judgment aside and to have judgment entered in their favor. Upon reargument the County Court judge reversed his position and found the notes were void because in contravention of the New York Banking Law, since they had been negotiated only for the purpose of obtaining a loan from plaintiff. It therefore set aside the original judgment and entered judgment against plaintiff. This appeal followed.

The nature of the transaction between plaintiff and Ferdinand is revealed by the agreement they entered into on June 11, 1957 relating to the advance of funds by plaintiff. Plaintiff agreed that it would from time to time purchase from the Ferdinand Agency accounts receivable and other choses in action representing monies due the Agency for unpaid premiums on insurance placed through it; and the Agency was to deliver to plaintiff promissory notes or other evidences of debt acceptable to plaintiff. Plaintiff was to advance to the Ferdinand Agency 75% of the net amount of the notes, and the remainder (less the "compensation" about to be mentioned) after actual receipt of payment of the balance thereof. The agreement provided that the Ferdinand Agency was to pay plaintiff, "as its compensation, 1/24th of 1% per day upon the net receivable balances from the date of purchase to the date of payment of the purchased accounts"; further, it was to pay plaintiff interest at the rate of 6% "upon the purchase-money outstanding, from the date of purchase to the date of payment" of the purchased accounts. Plaintiff's president testified that the total compensation to be paid amounted to about 24% a year.

Under the agreement it was the further responsibility of the Ferdinand Agency, in case any account was not paid in whole or in part at maturity, upon demand to pay plaintiff the full amount of the balance remaining unpaid. Attached to the agreement was a guarantee, signed by E. Jay Ferdinand and his wife individually, reciting that in order to induce plaintiff to purchase the Ferdinand Agency accounts, they would "jointly and severally guarantee the due payment and performance [by the Agency] of all monies to be paid and all things to be done, * * * as well as the due payment of all other obligations which [the Agency] may at any time owe [plaintiff], however created."

Additionally, the two Ferdinands gave plaintiff a mortgage, dated July 1, 1957, covering valuable properties owned by them in Millburn and Newark, N. J., securing

"* * * all sums which may be due and owing or which may become due and owing to [plaintiff] in accordance with the Agreement dated June 11, 1957 * * * and/or in accordance with the guaranty of the mortgagors dated June 11, 1957 * * *; and all sums which may be due and owing to [plaintiff] by virtue of said mortgagors' having guaranteed the payment of any debts owing or which may become owing from E. Jay Ferdinand Agency, Inc. to [plaintiff] (whether arising out of the endorsement of notes of said E. Jay Ferdinand Agency, Inc. or otherwise), which debt at the present time (in addition to such sums owing in accordance with said agreement dated June 11, 1957) amounts to the sum of THIRTEEN THOUSAND DOLLARS ($13,000) as evidenced by instruments of even date herewith."

On September 3, 1957 the Ferdinands gave plaintiff another mortgage covering the same properties, and of similar tenor, evidently intended as security to cover a further loan of $5,000 directly to the Agency.

Plaintiff is a New York corporation, but not incorporated under the General Corporation Law (22 *McKinney's Consolidated Laws of New York, Annotated*) or the Banking Law (4 *Id.*). Section 131(1) of the Banking Law of New York (4 *McKinney's Consolidated Laws of New York, Annotated*, § 131(1)), upon which defendants and the trial court relied, provides that:

"* * * No corporation, domestic or foreign, other than a national bank or a federal reserve bank, unless expressly authorized by the laws of this state, shall employ any part of its property, or be in any way interested in any fund which shall be employed for the purpose of receiving deposits, making discounts, receiving for transmission or transmitting money in any manner whatsoever, or issuing notes or other evidences of debt to be loaned or put into circulation as money. *All notes* and other securities for the payment of any money or the delivery of any property, *made or given to any such* association, institution or *company, or made or given to secure the payment of any money loaned or discounted by any corporation or its officers, contrary to the provisions of this section shall be void.*" (Italics ours.)

(Following the transaction here in question, section 131(1) was amended by L. 1958, c. 990, § 1, effective April 25, 1958, so as to delete the last sentence quoted above and to substitute in place thereof the following:

"\* \* \* The purchase or other acquisition on original issue or subsequent transfer for less than the principal amount thereof or otherwise at a discount of any evidences of indebtedness or other obligations for the payment of money shall not by reason of such discount be or be deemed to be a violation of the provisions of this section."

This amendment was apparently adopted in order to meet the decision in *Miller v. Discount Factors, Inc.,* 1 *N. Y. 2d* 275, 152 *N. Y. S. 2d* 273, 135 *N. E. 2d* 33 (*Ct. App.* 1956)).

Section 131(1) of the New York Banking Law was considered in *Meserole Securities Co. v. Cosman,* 253 *N. Y.* 130, 170 *N. E.* 519 (*Ct. App.* 1930). The court observed that the policy of the State of New York, embodied in that section as well as section 18 of the General Corporation Law (22 *McKinney's Consolidated Laws of New York, Annotated, section* 18), was to restrict business corporations not organized under the Banking Law from engaging in any form of banking. It was there held, by a divided court, that although business corporations might not encroach upon the field of banking occupied by banks of discount by "making discounts," even though they performed no other banking function, yet they were "not restrained or prohibited from purchasing notes at a discount where such purchase is not a mere device for carrying on the business of advancing or loaning money at interest, a form of banking customarily conducted by banks of discount, but is in fact as well as in form a commercial transaction of bargain and sale." Judge Lehman, for the majority, found that plaintiff "was engaged in the business of purchasing notes at less than their face value, apparently as a speculation." Plaintiff corporation had "made a trading bargain in order to reap a trading profit, in no manner measured by any rate of interest for use of the money." *Cf. Miller v. Discount Factors, Inc.,* above.

Our task, considering the purpose to be effectuated by section 131(1) of the Banking Law, is to determine whether the transaction here involved was a loan by plaintiff or the

purchase of notes. If the former, then plaintiff violated the New York statute. The matter is to be decided by analyzing the whole transaction, and not by what the lender-plaintiff says it intended to do or by its use of the word "purchase" in the June 11, 1957 agreement. We look behind the label to what actually transpired. Was plaintiff's alleged purchase, in the words of Meserole, "a mere device for carrying on the business of advancing or loaning money at interest"?

In the present case it is entirely clear from a consideration of the agreement between plaintiff and the Ferdinand Agency that plaintiff was in essence lending money. It intended to derive its compensation in the form of interest, and this depended upon the number of days the money was outstanding, *i. e.*, it was to receive 1/24th of 1% per day upon the net receivable balances from the date of purchase to the date of payment of the purchased accounts, as well as 6% *per annum* upon the purchase money outstanding, from the date of purchase to the date of payment. This was not a case where plaintiff was purchasing notes at less than face value as a speculation, on the chance that it would be able to realize more than the price it was paying for them. Quite simply, its sole interest was in a return of about 24% a year on the money it advanced. It was not overly concerned with who the nominal maker of the notes might be, but only with the Ferdinand Agency and Mr. and Mrs. Ferdinand individually as the ultimate security behind the obligations. Apparently the only financial report it drew was on the Ferdinand Agency—this was on or about June 11, 1957, at a time when E. Jay Ferdinand was trading under the name of E. Jay Ferdinand Agency. It was entirely satisfied that its advance was secure, by reason of the guaranty given by the Ferdinands individually and the real estate mortgage they had provided as collateral.

We conclude that the money advanced by plaintiff was a loan at interest, and that in the instant case it engaged in a banking transaction violative of section 131(1) of the

New York Banking Law. The promissory notes it took as part of the transaction were therefore, under the provisions of that statute, void.

In view of our holding, we need not consider whether plaintiff was a holder in due course. Nor need we deal with defendants' contention that the transaction was usurious, since such discussion would be entirely academic.

The judgment is affirmed.