Froessel, J.
On February 2, 1953, at the suggestion of a note broker whom it had consulted, Philip Freeman Co., Inc. (hereinafter called Freeman), made five promissory notes to its president, Walter Freeman, so that he “ could have them discounted ’ ’. The notes were in the sums of $3,000 each, payable during the five succeeding months. After indorsement by its president and his brother-in-law, plaintiff Isidore Miller, neither of whom received any consideration therefor, defendant Discount Factors, Inc. (hereinafter called Discount), which had already loaned Freeman $20,000, made this additional loan of $15,000 on these five notes, which had no prior legal inception.
In addition to interest at 6% which the notes bore on their face, Discount received the sum of $675 as a “ discount charge ”. Thus the aggregate total compensation for making the loan was $900, which would be precisely equivalent to interest at the rate of 2% per month, or 24% per year. In making the loan, Discount deducted therefrom $500 for the note broker, the aforesaid sum of $675 which it caused to be repaid to itself, and then paid the remaining proceeds of $13,825 to Freeman.
It was conceded at the trial that the normal practice of Discount, which maintained an office for the regular transaction of its business in New York City, was to deduct charges in excess of 6% “in advance at the time of the making of said loans ”. It was further undisputed that Discount was organized under the Stock Corporation Law of this State, and had had ten to twenty similar transactions with Freeman over the previous two or three years.
Plaintiff Miller sued in the Supreme Court to recover the amounts paid by him as indorser on the first three notes, upon the ground that he had paid them under a mistake of law (Civ. Prac. Act, § 112-f). In two separate City Court actions which were later consolidated with the Supreme Court action, defendant Lippel sued plaintiff to recover on the remaining two unpaid notes Lippel had acquired from Discount, which also paid him a part of the aforesaid sum of $675. The trial court sustained plaintiff’s contention that the foregoing facts established an illegal discount in violation of section 131 of the Banking Law *279 and that the notes were void. Accordingly it dismissed Lippel’s complaints. In Miller’s action, it instructed the jury, without exception, that Miller could recover only if he paid the money under a mistake of law. The jury resolved that issue against Miller.
The Appellate Division found that Discount does not carry on any hanking business “ except possibly the discounting of notes ” and, though it conceded that “ the question is not free from doubt ”, it further held that the notes, though having no prior valid inception as negotiable instruments, were valid. Nevertheless, it affirmed the jury’s finding in favor of Discount against Miller. As to Lippel, it reversed the trial court and granted him judgment against Miller. Although it granted leave to appeal from so much of the judgment as affirmed the trial court in Miller’s action, the appeal is before us as of right (Eisenbach v. Gimbel Bros., 281 N. Y. 474; International Harvester Co. of America v. Whelan, 273 N. Y. 496; Cohen and Karger, Powers of the New York Court of Appeals, § 50, pp. 227-228).
We are thus called upon to decide whether under the facts in this case the instant transaction with Discount avoids the prohibition of section 131 of the Banking Law, because only a so-called bonus charge, and not the interest provided for on the face of the notes, was deducted when the loan was made. The Appellate Division answered this question in the affirmative. It may here also be noted that, under section 18 of the General Corporation Law, corporations such as Discount may not “ by any implication or construction be deemed to possess the power ” to discount notes.
Section 131 (former § 140) of the Banking Law is derived from chapter 236 of the Laws of 1818. It is said to have been enacted to prevent the dangers of banking inflation (Meserole Securities Co. v. Cosman, 253 N. Y. 130, 145), and to be “a settled policy of the Legislature to prevent corporations which are not formed for banking business from carrying on or in any way interfering with the same ” (New York State Loan & Trust Co. v. Helmer, 77 N. Y. 64, 69).
The section clearly provides that ‘1 All notes # * * made or given to secure the payment of any money loaned or discounted ” contrary to its provisions, by a domestic corporation other than one organized under the Banking Law, “ shall be *280 void It has been held that if snch a corporation does so deduct or discount any sum when making a loan, no suit may be maintained on the notes given to secure repayment of that loan because such notes are void (Pratt v. Short, 79 N. Y. 437; New York State Loan & Trust Co. v. Helmer, supra). Thus, if the deduction from a loan of a so-called ‘1 bonus ’ ’ charge is the making of a discount, the notes in issue are invalid.
In Meserole Securities Co. v. Cosman (supra), the issue was presented as to whether certain existing notes which there had a valid inception were void because they were purchased at less than face value by a corporation which engaged in numerous transactions of the same nature, but otherwise exercised no banking powers. A divided court answered in the negative, the majority holding (253 N. Y. 147) that a corporation is not prohibited from purchasing notes which had a valid inception at a discount “ where such purchase is not a mere device for carrying on the business of advancing or loaning money at interest ”. The minority felt that a purchase as well as a loan at a discount violated the Banking Law.
Subsequent cases have upheld this distinction between notes discounted when a loan is made, in which case the discounted notes are the consideration for the loan, and the purchase of existing notes at a discount, holding the former void and upholding the validity of the latter (Siebros Finance Corp. v. 190 West Fourth St. Realty Corp., 256 N. Y. 586 [purchase]; Pennsylvania Factors Corp. v. S. Oldman, Inc., 272 App. Div. 1049 [purchase]; Yorkville Business Protective Corp. v. Friedman, 144 Misc. 325 [App. Term., 1st Dept.] [Ioan]; Proper Spirit Trading Corp. v. Schilowitz, 140 Misc. 171 [App. Term, 1st Dept.] [Ioan]).
Although the Meserole case (supra) did not involve the precise question here presented, we there discussed and defined the meaning of the terms used in section 140 (now § 131) of the Banking Law, stating (253 N. Y. 130, 138) that banks of discount ‘ ‘ loan or advance moneys to the makers or holders of negotiable instruments, receiving at that time, by deduction from the sum loaned or advanced, the interest or compensation to be paid for the advance of the bank’s money ” (emphasis supplied). And in an earlier case (City Bank of Columbus v. Bruce & Fox, 17 N. Y. 507, 515) we said: u The ‘ discounting ’ of a note by a bank is understood to consist in the lending of money upon *281 it, and deducting the interest or premium in advance ” (emphasis supplied).
Thus the word “ discount ” has been interpreted to mean a charge for a loan in advance, whether called interest, compensation or premium. There is nothing in section 131 to indicate that the word “ discount ” is limited to the deduction of only that which is formally and specifically called interest on a note. We therefore see no validity in the holding that because only so-called “ bonus charges ”, which even Lippel in his brief to this court expressly characterizes as “ interest ”, and which were actually a part of the compensation for the loan on these notes, were deducted in advance, the corporation so discounting them did not violate the statutory prohibition. A similar argument has been made and rejected in cases involving the usury laws (General Business Law, §§ 370-371). Attémpts have been made to deduct a “bonus” or “premium” instead of an illegal rate of interest, but it has been held that such a device will not defeat the usury laws, and the ‘ ‘ bonus ’ ’ deducted has been regarded as interest (Breunich v. Weselman, 100 N. Y. 609; Schoenfelder v. Bremer, 239 App. Div. 366; Schanz v. Sotscheck, 160 App. Div. 798). To hold otherwise would permit Discount or any other corporation to circumvent the prohibition of section 131 by the simple device of deducting in advance a part of its compensation, which to all intents and purposes is interest, and labeling this part a 1‘ bonus ’ ’.
Nor do we see any validity in the holding below that inasmuch as banks of discount cannot charge more than 6% (Banking Law, § 108), and since Discount did charge more than 6%, this “ was not the making of a discount such as might be engaged in by a bank ”. (285 App. Div. 772, 777.) The rate exacted is not the test. The pertinent statutes do not provide that their prohibition of discounts is to be effective only if .the annual rate charged is 6% or less and the entire discount is taken in advance rather than three fourths of it. They plainly forbid all discounts. In this case Discount did, in fact, the very things we said in the Meserole case (supra) were the functions of a bank of discount, namely, used its funds and deducted in advance the larger part of its compensation for the money loaned to Freeman. This was the exercise of a banking power prohibited by section 18 of the General Corporation Law, and, no matter what the sum deducted is called, and no matter what the percentage retained, *282 it was the making of a discount which is invalidated by section 131 of the Banking Law.
It is no answer to the prohibition of section 131 to argue that section 18 of the Stock Corporation Law, and its charter of incorporation, permit Discount to lend money and purchase or acquire notes, and that this transaction involved a loan and not a discount. The authorization to lend money in said section 18 does not entitle a domestic corporation, not organized under the Banking Law, to discoibnt negotiable paper (1929 Atty. Gen. 242). Of course the instant transaction was a loan, but out of it the discount arose. As we said in the Meserole case (supra), it is the lending of money, and the deduction of the compensation for the loan in advance, from notes given to secure repayment thereof, that is prohibited by section 131 of the Banking Law. It is such a discounted loan that is involved in this case. Discount could have made a loan and charged any rate of interest that was agreed upon, but if the loan is evidenced by promissory notes, and the charges therefor are deducted in advance, in whole or in part, it transgresses the Banking Law.
It is also no answer to urge that even if there were a discount of interest, the notes are still valid because Discount was not carrying on any other banking operations, but was merely exercising a single power also exercised by banks of discount. The prohibitions of both section 18 of the General Corporation Law and section 131 of the Banking Law are phrased in the disjunctive, and no corporation may be deemed to possess the potoer to discount notes or do any of the other acts prohibited by said statutes. If such corporation does make discounts, all notes so discounted are void (Banking Law, § 131). There is nothing-in these two sections which permits a corporation to engage in one of the prohibited activities, so long as it does not engage in more than one such activity.
In the Meserole case (supra), the majority made this clear when they stated: ‘ ‘ The Legislature by its disjunctive enumeration of banking powers which a corporation other than a bank may not exercise as a business, has unequivocally indicated that the statute applies even where a corporation assumes to exercise a single one of the enumerated powers. * * * business corporations may not encroach upon the field of banking occupied by banks of discount by ‘ making discounts ’ even though they perform no other banking function ”. (253 N. Y. *283 130, 137, 147; emphasis supplied.) It appears, then, that these five notes were discounted in contravention of section 131 of the Banking Law and are therefore void. Accordingly, the actions brought by Lippel on the unpaid fourth and fifth notes were properly dismissed by the trial court.
As to Miller’s action, the Appellate Division noted that the jury found in favor of Discount, and it agreed that the judgment in Discount’s favor should be affirmed, apparently on alternative grounds: (1) that the notes were valid, or (2) even if the notes were void, it affirmed the finding implicit in the jury’s verdict, based upon appropriate instructions of the trial court to which no exception was taken, that plaintiff voluntarily paid the notes with knowledge of his rights. The jury had the right to make this finding upon the record. They were charged, without exception, that the burden of proof was upon plaintiff. The only evidence introduced in this connection was given by plaintiff himself. The jury was authorized to consider his statement to Discount’s president in light of his other testimony, his appearance on the stand, and the fact that he was an interested witness. In view of plaintiff’s many contradictory statements, Freeman’s indebtedness to his partnership in the sum of $8,000, his reluctance to disclose his full relationship with Freeman for which he had the power to sign checks, and his prior experience with at least five other notes he had indorsed for Freeman on other occasions, the jury could disbelieve his disclaimer of knowledge. Since it did so, as appears by its verdict, there was no evidence remaining to sustain plaintiff’s case. That being so, we are concluded by the affirmance of the facts by the Appellate Division in Miller’s case against Discount.
Accordingly, that part of the judgment appealed from which affirmed the trial court’s determination in favor of Discount against plaintiff should be affirmed, with costs to Discount against plaintiff, not, however, upon the ground that the notes in question were valid; and so much of the judgment appealed from as reverses the trial court’s dismissal of Lippel’s complaints should be reversed, and that part of the trial court’s judgment reinstated, with costs to plaintiff against Lippel.
Conway, Ch. J., Desmond, Dye and Burke, JJ., concur with Froessel, J.; Fuld and Van Voorhis, JJ., dissent and vote to affirm.
*284 Judgment modified in accordance with the opinion herein and, as so modified, affirmed, with costs to defendant Discount Factors, Inc., against plaintiff and with costs to plaintiff against defendant Lippel.