253 F.2d 675
 NEW YORK CREDIT MEN'S ADJUSTMENT BUREAU, Inc., as Trustee in
Bankruptcy of Stanton Togs, Inc., Appellant,
v.
SAMUEL BREITER & CO., Inc., Appellee.
In the Matter of STANTON TOGS, Inc., Bankrupt.
 No. 148, Docket 24726.
 United States Court of Appeals Second Circuit.
 Argued Jan. 13, 1958.
Decided March 25, 1958.
 
 Benjamin Brownstein, New York City (Siegel & Brownstein, New York City, on the brief), for appellant.
 Harold A. Lipton, New York City (Booth, Lipton & Lipton, New York City, on the brief), for appellee.
 Before MEDINA and MOORE, Circuit Judges, and GALSTON, District Judge.
 MOORE, Circuit Judge.
 
 
 1
 This is an appeal by the Trustee in Bankruptcy of Stanton Togs, Inc. from an order of the District Court for the Southern District of New York, reversing an order of a Referee in Bankruptcy which denied the motion of Samuel Breiter & Co. (referred to as 'Breiter') to reclaim certain chattels under a chattel mortgage.
 
 
 2
 On June 1, 1956 Stanton Togs executed and delivered to Breiter a chattel mortgage on certain of its machinery and equipment as security for an indebtedness of $7,800 (consisting of a loan of $6,700 and various charges, such as interest, bonus and fees totalling $1,100) repayable in monthly installments evidenced by twelve promissory notes of $650 each, the first note due on July 15, 1956. Upon execution of the chattel mortgage Stanton Togs received from Breiter $6,700. This transaction was typical of the business conducted by Breiter and in the regular course of its business it was the lender in many such transactions.
 
 
 3
 Stanton Togs made no monthly payments, petitioned for an arrangement under Chapter XI, 11 U.S.C.A. 701 et seq., on June 19, 1956, and on August 26, 1956 was adjudicated a bankrupt. Thereafter the trustee sold the chattels secured by mortgage and now holds the net amount realized, $6,582.90, pending final determination of this proceeding.
 
 
 4
 In opposition to the petition to reclaim the chattels the sole defense raised by the Trustee was that the notes were discounted and that therefore the entire transaction was void under section 131 of the New York Banking Law[1] and section 18 of the New York General Corporation Law[2] prohibiting the discounting of loans by non-banking corporations. The Referee upheld this defense but the District Court reversed holding that section 18 allowed a non-banking corporation to make a loan secured by a chattel mortgage and rendered the prohibition of section 131 inapplicable even assuming a discount.
 
 
 5
 The question here presented is of considerable importance to the business world because many companies (particularly the small or medium size) are frequently financed by secured loans from non-banking companies.
 
 
 6
 For its defense, the Trustee primarily relies upon the recent case of Miller v. Discount Factors, Inc., 1 N.Y.2d 275, 152 N.Y.S.2d 273, 135 N.E.2d 33, to support its contention that Breiter cannot reclaim the chattels given to it as security. That case was decided by the New York Court of Appeals in May 1956 and 'staggered the financial and commercial mechanism-- and the executives and lawyers who are responsible for its operation-- ' (Kupfer, Prohibited Discounts Under the Banking and General Corporation Laws: The impacts of Miller v. Discount Factors, Inc. Vol. 12, No. 1, The Record, Association of the Bar of the City of New York). Another author has described the Miller case as 'a time bomb that had lain dormant in the statutes of New York for over a hundred years' (Kripke, Illegal 'Discounts' by Non-Banking Corporations in New York, 56 Col.L.R. 1183).
 
 
 7
 To account for, and in explanation of, this reaction, the law of New York on the subject must be reviewed.
 
 
 8
 The purpose of section 131 was obviously to confine banking functions to government chartered, regulated and inspected institutions and to avoid the possible chaos which might arise were every uncontrolled corporation allowed to act in such a capacity.
 
 
 9
 Passing by earlier decisions, in 1880 the New York Court of Appeals (Pratt v. Short, 79 N.Y. 437) decided that although the discounted note was unenforceable the lender might recover the amount actually loaned as money had and received because 'If the defendants avoid their endorsement it is the plainest equity that they shall restore the money which they received on the faith of it' (79 N.Y. at page 449). On the same day the Court of Appeals in Pratt v. Eaton, 79 N.Y. 449, held the discounted note to be unenforceable, but permitted foreclosure of the mortgage securing it.
 
 
 10
 In 1931 in Williams-Dexter Co. Inc. v. Dowland Realty Corp., the trial court granted a foreclosure of a $33,000 real estate mortgage given to secure a loan of $25,000. The Appellate Division, affirming three to two, sent the case on without opinion for final disposition on certified questions as to the validity of the defenses (234 App.Div. 827, 253 N.Y.S. 987). The Court of Appeals answered the questions in the negative, affirmed the judgment of foreclosure but wrote no opinion (259 N.Y. 581, 182 N.E. 189).
 
 
 11
 In 1935 the State legislature amended section 18 by adding the exception 'that engaging in the business of loaning money in this state on bonds, notes or other evidences of indebtedness, secured by dees of trust or mortgages upon real property or personal property situated in, upon or appurtenant thereto, * * * and the holding of the same, or the endorsing, selling, assigning, transferring or disposing of the same to another corporation, by a domestic business corporation, or by a foreign corporation * * * shall not be deemed or construed to violate any of the provisions of the banking law' (Laws of 1935, Chapter 905).
 
 
 12
 Thereafter in 1954 in a bankruptcy proceeding the District Court (Leibell, D.J., S.D.N.Y.) upheld both the validity of notes on which the interest was deducted in advance and a chattel mortgage securing the notes (Wolf v. Aero Factors Corporation, 126 F.Supp. 872). This Court affirmed (2 Cir., 221 F.2d 291).
 
 
 13
 In the Miller case (1 N.Y.2d 278, 152 N.Y.S.2d 275) five notes were made by a corporation to its president in the total face amount of $15,000 'so that he 'could have them discounted." They were then endorsed by the president and Miller. A stock corporation, Discount Factors, Inc., then discounted the notes, paying the president $13,825. The notes were unsecured. In an action by a person who had acquired two unpaid notes from Discount Factors against the endorser, Miller, to recover on the notes, the court held that no action on the notes could be brought because they had been discounted by a non-banking corporation in violation of section 131 of the Banking Law.
 
 
 14
 Regardless of the wisdom of not allowing recovery against the maker or endorser on an unsecured loan where the lender has charged a flat sum included in the face of the note for the cost of the money in place of charging at a percentage rate,[3] such a distinction loses all validity in the case of a secured transaction. There the lender looks to tangible property as protection for his money rather than to the maker or one who has endorsed the note prior to its being discounted. The Miller case neither held nor intimated that the prohibition against discounting of loans contained in section 131 could be used to bar an attempt by a secured creditor to obtain his property upon default.[4]
 
 
 15
 It is a fair inference here that due to Stanton Togs' poor financial condition (its petition for bankruptcy being filed less than three weeks after the loan was made), it could have obtained no loan, discounted or otherwise, without giving adequate security therefor. But once having obtained the loan, the trustee, who in this case stands in no better position than the bankrupt, asserts that it can retain the fruits of the loan in one hand while using the other to avoid and, in fact, take back the security given to Breiter to obtain the loan. The trustee in effect seeks to pervert the doctrine of the Miller case into an instrument of double forfeiture.
 
 
 16
 Appellant argues that the exception in section 18 merely permits the making of non-discounted loans and that 'It had nothing to do with separate and distinct banking power to make 'discounts' on such loans in violation of the Banking Law.' But a corporation 'engaging in the business of loaning money' on secured evidences of indebtedness would in the normal course of business make loans to which interest and other charges would be added. There would appear to be no reason for engrafting onto this exception a restriction prohibiting the expression of interest and other charges in a lump sum and within the face amount of the note. Such a transaction would not fall within the category of a discount even though the amount received in relation to the note given might be the same. Appellant's argument is not a new one, and has already been presented to and rejected by New York courts. Amherst Factors, Inc. v. Kochenburger, 1957, 4 A.D.2d 745, 164 N.Y.S.2d 815; Williams-Dexter Co. v. Dowland Realty Corp., supra.
 
 
 17
 Appellant next argues that the exception in section 18 of the General Corporation Law does not apply to chattel mortgages, but only to mortgages on real property or on 'personal property situated in, upon or appurtenant thereto.' Appellant claims that by using this language the legislature intended the exception to cover a mortgage on personal property only when given in conjunction with a mortgage on the realty. Had such a construction been desired the word 'and' could easily have been substituted for 'or.' Where the lender is given his choice, the courts should not write into the law that he take both. Furthermore there will be many instances in which a needy borrower will have no other security to offer except personal property. No sound reason exists for imputing to the legislature any such intent to differentiate between types of property. However, it is not necessary to pass upon this argument; for even assuming that the legislature had such a distinction in mind, it does not follow that a loan secured by personalty comes within the proscription set forth in section 131 of the Banking Law.
 
 
 18
 The exception in section 18, enacted in 1935, merely codified the existing law on secured transactions. Prior case law made no distinction between real or personal property as security (Pratt v. Eaton, supra; Duncomb v. New York H. & N.R. Co., 84 N.Y. 190), and upheld the validity of secured loans even where the notes had been discounted. As the court noted in Antipyros Co. v. Samuel Breiter & Co., Inc., 1957, 8 Misc.2d 310, 165 N.Y.S.2d 976, affirmed 4 A.D.2d 941, 167 N.Y.S.2d 1002, in holding that discounted notes secured by a chattel mortgage were not void, there can be no rational reason for drawing a distinction based upon the type of security underlying the notes.
 
 
 19
 The trustee argues that where, as here, the security is part of the same transaction as the notes, it also is void. From this premise he contends that, the contract being illegal, a court will not grant relief to either party. The action in the Miller case was upon the notes; it was not an action for money had and received. Although the court in the Miller decision repeatedly refers to the notes as void, it did not condemn the underlying loan as illegal. Nor could it not have done so without overruling Pratt v. Short, supra, which allowed recovery of the amount actually loaned. Furthermore, the ground for affirming the judgment against Miller in his action against Discount Factors to recover payments previously made on the notes was that it was within the power of the jury to reject Miller's assertion that he paid the money under a mistake of law. Had the court been of the opinion that Miller was a party to an illegal contract and hence unable to seek relief from a court, it should not have been concerned with the issue of Miller's credibility or lack of it. Moreover, it has been held that, where the loan is secured, the notes arising out of the transaction are not void.
 
 
 20
 In Amherst Factors, Inc. v. Kochenburger, supra, (4 A.D.2d 745, 164 N.Y.S.2d 817) the precise reason given by the Appellate Division for enforcing the discounted notes as well as the security was that 'the guarantee and mortgage were executed simultaneously with the making of the loan and discount and as part of a single transaction.' So here the notes, made at the same time as the loan and mortgage, merely evidenced the total amount due, consisting of principal, interest and charges, and fixed the dates of the various installment payments. Thus they, too, were a 'part of a single transaction.' While the transaction in the Amherst Factors case involved real property security, as pointed out above, no different result should be reached where the security is personalty (Wolf v. Aero Factors Corp., supra; Antipyros Co. v. Samuel Breiter & Co., Inc., supra).
 
 
 21
 For years the practice of lending money against security has been carried on by non-banking institutions. Naturally, where loans are made to companies of questionable financial standing, as is so evident here, the risks are great and the lender will exact high interest and impose other charges. But whether the interest is added in advance or is called a discount affects neither the interest rate nor the morals of the transaction.
 
 
 22
 If excessive interest rates frequently exacted from corporations in dire financial distress are to be condemned it may well be that laws should be enacted on this subject. On the other hand, unless there is some fundamental distinction, hitherto unexpressed in the decisions, among the various methods of expressing interest charges (see Kripke, supra, pp. 1192-1194), the form of the expression, namely, by one note for principal, another for interest or other charges, or by including them all in one note should not affect the legality of the transaction. However, sections 131 and 18 may require clarification in the light of the Miller decision.
 
 
 23
 The practical aspects of the problem cannot be better summarized than in the Kupfer critique in which he writes 'The true touchstone, against which any legal principle should be tested, is the extent to which it effectuates the common understanding and reasonable expectations of laymen in the conduct of their daily affairs. In a free economy, such effectuation is necessary to maintain employment; assure investment; improve our standard of living; and keep the wheels of our social organism functionally reciprocal' (op. cit. supra, at p. 47). Tested by these principles, justice and equity require that Breiter should not be deprived of the proceeds of the security against which it advanced its funds.
 
 
 24
 The order of the District Court is affirmed.
 
 
 
 [1]
 This section provides in relevant part:
 '1. * * * No corporation, domestic or foreign, other than a national bank or a federal reserve bank, unless expressly authorized by the laws of this state, shall employ any part of its property, or be in any way interested in any fund which shall be employed for the purpose of receiving deposits, making discounts, receiving for transmission or transmitting money in any manner whatsoever, or issuing notes or other evidences of debt to be loaned or put into circulation as money. All notes and other securities for the payment of any money or the delivery of any property, made or given to any such association, institution or company, or made or given to secure the payment of any money loaned or discounted by any corporation or its officers, contrary to the provisions of this section shall be void. * * *'
 
 
 [2]
 '18. Prohibition of banking powers
 'No corporation, domestic or foreign, other than a corporation formed under or subject to the banking laws of this state or of the United States, and except as therein provided shall by any implication or construction be deemed to possess the power of carrying on the business of discounting bills, notes or other evidences of debt, of receiving deposits, of buying and selling bills of exchange, or of issuing bills, notes or other evidences of debt for circulation as money, or of engaging in any other form of banking; * * * provided further that engaging in the business of loaning money in this state on bonds, notes or other evidences of indebtedness, secured by deeds of trust or mortgages upon real property or personal property situated in, upon or appurtenant thereto, and/or purchasing of or otherwise acquiring existing bonds, notes or other evidences of indebtedness, deeds of trust or mortgages of or upon such properties, or any interest therein, and the holding of the same, or the endorsing, selling, assigning, transferring or disposing of the same to another corporation, by a domestic business corporation, or by a foreign corporation which has obtained from the secretary of state a certificate authorizing it to transact business in this state, shall not be deemed or construed to violate any of the provisions of the banking law.'
 
 
 [3]
 See the discussion of the Miller case in Kripke, supra
 
 
 [4]
 In the unofficial report of the Miller case, 152 N.Y.S.2d 273, at pages 277-278, the following sentence appears:
 'Subsequent cases have upheld this distinction between notes (or other securities for the payment of money) discounted when a loan is made, in which case the discounted notes are the consideration for the loan, and the purchase of existing notes at a discount, holding the former void and upholding the validity of the latter (citing cases).'
 In the subsequent official report, however, the parenthetical phrase 'or other securities for the payment of money' was deleted. 1 N.Y.2d 275, at page 280, 152 N.Y.S.2d 273, at page 277. It has been argued that the reason for the court's deletion of this phrase was to avoid casting doubt on the validity of secured transactions where the notes were discounted. See Kupfer, supra, p. 43.