Jack SIGMAN, as Trustee in Bankruptcy
of Kunstler Importing Corp., Bank-
rupt, Plaintiff,

v.

CLAAR BROS., INC., Defendant.

United States District Court
S. D. New York.
June 6, 1960.

David Haar, New York City, for plain-
tiff.

Sheldon & Olshan, of New York City,
Howard Sheldon, New York City, of
counsel, for defendant.

DAWSON, District Judge.

This action, tried by the Court with-
out a jury, is one wherein the plaintiff,
as trustee in bankruptcy of Kunstler
Importing Corp., sues defendant for
$100,000 on the ground that the defend-
ant in violation of § 18 of the General
Corporation Law of the State of New
York, and § 131 of the Banking Law of
the State of New York, loaned money to
the bankrupt to the extent of over $300,-
000, "taking as security for such loans
certain promissory notes made payable
to the bankrupt, and which the bankrupt
endorsed at or prior to the time of deliv-
ery to the defendant," and that "upon
such delivery of the aforesaid notes, on
each occasion, the defendant discounted
such notes."

The plaintiff alleges that the amount
of $100,000 is the amount of discounts
retained by the defendant and that the
defendant was not authorized to make
discounts since it was not organized un-
der the Banking Law of the State of New
York.

The essential facts in connection with
the case were stipulated at the trial.
They were as follows:

1. Kunstler Importing Corp. was or-
ganized in 1946 under the Stock Corpo-
ration Law of the State of New York to
conduct the business of a dealer in dia-
monds, and it conducted such business in

the City of New York until March 6, 1953, when it filed a voluntary petition of bankruptcy and was adjudicated a bankrupt. Jack Sigman was elected trustee of the bankrupt's estate and has been since then, and is now, acting as such trustee.

2. Defendant Claar Bros., Inc., is a corporation organized in 1942 under the Stock Corporation Law of the State of New York under the name of Eastern Factors Corporation. It had broad powers under its certificate of incorporation, including the power to purchase and sell notes and to lend money. The defendant, however, is not organized under the banking laws of the State of New York nor is it a national bank or a federal reserve bank. In February of 1946 the defendant filed a certificate with the Secretary of State of the State of New York changing its name from Eastern Factors Corporation to Claar Bros., Inc. Since its change of name the defendant has conducted primarily the business of diamond dealer.

3. The transactions leading to this action all fall in a certain pattern. The pattern was this:

The bankrupt company (hereinafter called "Kunstler") sold diamonds at wholesale. In some cases its customers paid cash for the diamonds; in other cases the customers gave to Kunstler their promissory notes representing the purchase price of the diamonds. The notes did not carry any interest. There seems to be no question that the notes in each case represented the purchase of diamonds. From time to time Kunstler, being in need of funds, would deliver customer notes to Claar Bros. Inc. and in return receive the principal amount of these promissory notes, less a deduction representing a charge at the rate of 1½% per month from the date Claar Bros., Inc., took over the notes until the due dates of the notes. Before Kunstler turned over such notes to Claar Bros., Inc., the notes would be endorsed by Kunstler and by two officers thereof.

4. After Claar Bros., Inc., received the notes from Kunstler it would then collect the amounts therein directly from the makers of the notes. If they were not paid by the makers of the notes then Claar Bros., Inc., had recourse against Kunstler or its two officers on their respective endorsements. When Kunstler received the money from Claar Bros., Inc., it did not execute any note of its own.

## Discussion

Claar Bros., Inc., contends that it was not lending money to Kunstler but rather was buying from Kunstler its accounts receivable represented by promissory notes. It contends that it was, therefore, not engaged in the banking business and was not making loans or discounts. It contends in effect that it was doing a "factoring" business rather than a banking business, and that this type of business is not prohibited by the banking laws of the State of New York.[1]

1. The relevant sections of the statutes follow:

New York Banking Law, § 131. "1. * * * No corporation, domestic or foreign, other than a national bank or a federal reserve bank, unless expressly authorized by the laws of this state, shall employ any part of its property, or be in any way interested in any fund which shall be employed for the purpose of receiving deposits, making discounts, receiving for transmission or transmitting money in any manner whatsoever, or issuing notes or other evidences of debt to be loaned or put into circulation as money. All notes and other securities for the payment of any money or the delivery of any property, made or given to any such association, institution or company, or made or given to secure the payment of any money loaned or discounted by any corporation or its officers, contrary to the provisions of this section shall be void. * * * "

New York General Corporation Law, § 18. Prohibition of banking powers.

"No corporation, domestic or foreign, other than a corporation formed under or subject to the banking laws of this state or of the United States, and except as therein provided shall by any implication or construction be deemed to possess the power of carrying on the business of discounting bills, notes or other

Section 131 of the New York Banking Law prohibits a corporation, other than a bank, from employing any of its property for "making discounts" and provides that all notes or other securities for the payment of money, made or given to secure the payment of any money loaned or discounted by any corporation or its officers, contrary to the provisions of this section, shall be void. Section 18 of the New York General Corporation Law provides that no corporation, other than a banking corporation, shall be deemed to possess the power of carrying on the business of "discounting bills, notes or other evidences of debt."

The issue in this case is necessarily whether the activities of the defendant violated these provisions of the New York statutes.

Primarily this involves the question of what is meant by the word "discount." Does the prohibition against a corporation engaging in the business of making discounts prevent a corporation from transactions of a factoring nature? This issue was presented to the Court of Appeals of the State of New York in Meserole Securities Co. v. Cosman, 1930, 253 N.Y. 130, 170 N.E. 519, 521. The court in that case differentiated between a purchase of validly issued notes and transactions consisting of a loan and discount. The court distinguished between cases in which a loan was made and in which a discount was taken in consideration of the loan, and the purchase of existing notes at a discount,

holding the former void and upholding the validity of the latter.[2]

The court pointed out:

"*  *  * We must determine specifically whether the Legislature in using the word 'discount' either in the restrictive provisions of the General Corporation Law or in the prohibitory provisions of section 140 of the Banking Law intended to include the purchase at less than its face value of an existing note, payable thereafter, with interest till the date of payment, by a corporation which engaged in numerous transactions of the same nature but otherwise exercised none of the powers enumerated in section 22 (now section 18 of the General Corporation Law)."

After posing the question the court pointed out that the prohibited "discounts" are "the usual discounts of banking institutions made for the purpose of loaning money to their customers," and then said:

"*  *  * If wherever a business corporation receives deposits or 'makes discounts,' it performs a prohibited act, and all notes made or given for such purpose are void, then for one hundred years factors and other merchants have unsuspectingly broken the law and have enforced, without question, notes which were void."

The court then held that

evidences of debt, of receiving deposits, of buying and selling bills of exchange, or of issuing bills, notes or other evidences of debt for circulation as money, or of engaging in any other form of banking; *  *  * provided further that engaging in the business of loaning money in this state on bonds, notes or other evidences of indebtedness, secured by deeds of trust or mortgages upon real property or personal property situated in, upon or appurtenant thereto, and/or purchasing of or otherwise acquiring existing bonds, notes or other evidences of indebtedness, deeds of trust or mortgages of or upon such properties, or any interest therein,

and the holding of the same, or the endorsing, selling, assigning, transferring or disposing of the same to another corporation, by a domestic business corporation, or by a foreign corporation which has obtained from the secretary of state a certificate authorizing it to transact business in this state, shall not be deemed or construed to violate any of the provisions of the banking law."

2. This seems to be a reasonable distinction and consistent with the history of the Banking Law of New York. See, "More on 'Discounts' Under New York's Banking Law: Antiquarian Research Inspired by Contemporary Legislation." 68 Yale L.J. 269 (1958).

" * * * under a reasonable construction of the relevant statutes business corporations may not encroach upon the field of banking occupied by banks of discount by 'making discounts' even though they perform no other banking function; yet they are not restrained or prohibited from purchasing notes at a discount where such purchase is not a mere device for carrying on the business of advancing or loaning money at interest * * *."

In Wolf v. Aero Factors Corp., D.C., 126 F.Supp. 872, 877, affirmed 2 Cir., 221 F.2d 291, Judge Leibell of this court stated:

" * * * But the New York Court of Appeals has expressly held that a business corporation may lend money on real and personal security without in any form conducting a banking business. Meserole Securities Co. v. Cosman, 253 N.Y. 130, at page 134, 170 N.E. 519. A factoring business is not a form of banking business. Pennsylvania Factors Corporation v. S. Oldman Inc., 272 App.Div. 1049, 74 N.Y.S. 2d 670."

Twenty-six years after the decision in Meserole, the Court of Appeals of New York handed down its decision in Miller v. Discount Factors, Inc., 1956, 1 N.Y.2d 275, 152 N.Y.S.2d 273, 276, 135 N.E.2d 33. This is the case upon which plaintiff primarily relies. In this decision the Court of Appeals held that a company which loaned funds in exchange for a series of notes and deducted a flat "bonus charge" in advance, was engaged in "making discounts" within the prohibition of the banking statute. The decision created consternation in financial and factoring circles in New York. See, "Illegal 'Discounts' by Non-Banking Corporations in New York," by Homer Kripke, 56 Colum.L.Rev. 1183 (1956). The decision was followed by legislation, finally adopted in 1958, which has the effect of legislatively limiting the implications of the Miller decision.[3] The legislation was not retroactive and the plaintiff relies primarily on the Miller case for his contention that the transactions in the instant action violated the banking statutes. Even if the Miller decision properly states the applicable law, it does not invalidate the transactions in the instant case. In the Miller case the Freeman Company had made five promissory notes to its president, so that he could have them discounted after endorsement by the president and his brother-in-law, neither of whom received any consideration therefor. The defendant, Discount Factors, Inc., made a loan to the Freeman Company of $15,000 on these five notes. The Court held these notes had "no prior legal inception." It then referred to the Meserole decision and said:

"In Meserole Securities Co. v. Cosman, supra, the issue was presented as to whether certain *existing* notes which there had a *valid inception* were void because they were purchased at less than face value by a corporation which engaged in numerous transactions of the same nature, but otherwise exercised no banking powers. A divided court answered in the negative, the majority holding, 253 N.Y. 147, 170 N.E. 525, that a corporation is not prohibited from *purchasing* notes which had a *valid inception* at a discount 'where such purchase is not a mere device for carrying on the

3. The 1958 amendments constituted Chapters 990 and 991 of the Laws of 1958. The amendments relevant to this issue add to § 131 of the Banking Law and § 18 of the General Corporation Law the following:
"The purchase or other acquisition on original issue or subsequent transfer for less than the principal amount thereof or otherwise at a discount of any evidences of indebtedness or other obligations for the payment of money shall not by reason of such discount be or be deemed to be a violation of the provisions of this section."

'business of advancing or loaning money at interest.' The minority felt that a purchase as well as a loan at a discount violated the Banking Law.

"Subsequent cases have upheld this distinction between notes * * discounted when a *loan* is made, in which case the discounted notes are the consideration for the loan, and the *purchase* of *existing* notes at a discount, holding the former void and upholding the validity of the latter. [Citing authorities.]"

The transactions in the instant case are similar to the transaction in the Meserole case and not similar to the transaction in the Miller case. In the instant case the notes which were transferred to the defendant had a prior legal inception in that they represented the purchase price of certain merchandise. They were not notes which were made simply for the purpose of securing a loan. When Kunstler transferred them to the defendant, Kunstler was not borrowing money from the defendant; it was selling its accounts receivable, represented by these notes, in exactly the same manner as if it were selling its inventory of merchandise. Kunstler did not borrow money from the defendant in the sense in which this term would be used by a businessman. Kunstler sold an asset and received payment therefor. True, the payment received was less than the face value of the notes, but if Kunstler had sold merchandise in its inventory in order to raise funds it probably would have sold such merchandise at less than its book value, and this could hardly be called a loan transaction.

The Court concludes that Kunstler was not borrowing money from the defendant; that the defendant was not loaning money to Kunstler or making illegal discounts in violation of the New York statutes, as interpreted by the New York courts; that plaintiff has not established a cause of action; and that the complaint should be dismissed on the merits, with costs.

This opinion shall constitute the findings of fact and conclusions of law of the Court. Let judgment be entered accordingly.