Jack SIGMAN, as Trustee in Bankruptcy of Kunstler Importing Corp., Bankrupt, Plaintiff-Appellant,

v.

CLAAR BROS., INC., Defendant-Appellee.

No. 303, Docket 26457.

United States Court of Appeals Second Circuit.

Argued March 9, 1961.

Decided June 16, 1961.

---

Before WATERMAN, MAGRUDER and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Plaintiff, Trustee in Bankruptcy of Kunstler Importing Corp., Bankrupt (Kunstler), appeals from a judgment dismissing his complaint in an action against Claar Bros., Inc. (Claar) to recover a sum of money retained by Claar upon the discount of various notes given to Kunstler by its customers. The theory of plaintiff's action is that Claar, not having been organized under the Banking Law of the State of New York, had no power to discount commercial paper and that the retention of 1½% per month on the face amount of the notes constituted a discount which Claar, organized under the Stock Corporation Law of the State of New York, § 1 et seq., was not authorized to take.

The business transactions between Kunstler and Claar were, in substance, as follows: Kunstler sold diamonds at wholesale and frequently accepted non-interest bearing notes from its customers. Kunstler, desirous of obtaining cash, endorsed the notes and delivered them to Claar, receiving the principal amount less the stated discount. Claar would collect the notes from Kunstler's customers but if they were not paid could look to Kunstler on the endorsements.

Claar contends that it was engaged in a factoring business and was, in effect, buying Kunstler's accounts receivable. This type of business, Claar argues, is not prohibited by New York's banking laws. Kunstler, on the other hand, claims that the transactions were loans by Claar secured by the customers' notes.

The controlling statutes are Section 131 of the New York Banking Law and Section 18 of the General Corporation Law.[1] The question to be resolved is

David Haar, New York City, for appellant.

Howard Sheldon, New York City (Sheldon & Olshan, New York City, on the brief), for appellee.

1. The relevant sections of the statutes follows:

New York Banking Law, § 131. "1. * * * No corporation, domestic or foreign, other than a national bank or a federal reserve bank, unless expressly authorized by the laws of this state, shall employ any part of its property, or be in any way interested in any fund which shall be employed for the purpose of

whether the transaction consists of "making discounts" prohibited by Section 131 or discounting notes as banned by Section 18, or was it the purchase of accounts receivable represented by notes? Do these provisions render illegal a purchase of issued and outstanding notes at a discount?

The New York Court of Appeals faced this problem squarely in Meserole Securities Co. v. Cosman, 1930, 253 N.Y. 130, 170 N.E. 519, 525. The court there differentiated between a discount taken in consideration of the loan and the purchase of already outstanding notes at a discount saying that "they [business corporations] are not restrained or prohibited from purchasing notes at a discount where such purchase is not a mere device for carrying on the business of advancing or loaning money at interest * * *." In Wolf v. Aero Factors Corp., 126 F.Supp. 872, 877, affirmed 2 Cir., 1955, 221 F.2d 291, the district court in the Southern District of New York said, "A factoring business is not a form of banking business," citing Pennsylvania Factors Corporation v. S. Oldham Inc., 1947, 272 App.Div. 1049, 74 N.Y.S. 2d 670.

However, in May, 1956, the New York Court of Appeals decided Miller v. Discount Factors, Inc., 1 N.Y.2d 275, 152 N.Y.S.2d 273, 276, 135 N.E.2d 33, which was probably intended to strike a blow at illegal moneylending practices. Actually the Miller case involved loans against notes from which bonus charges had been deducted in advance. The notes in effect were given by the borrower. The court held that these notes had "no prior legal inception," thus distinguishing the situation in the Meserole case.

Relying upon the then newly-announced Miller doctrine, Kunstler brought this suit in September, 1956. The Miller decision created consternation in financial and factoring circles in New York.[2] However, the effect of the Miller case was short-lived because the Legislature in 1958 amended both

receiving deposits, making discounts, receiving for transmission or transmitting money in any manner whatsoever, or issuing notes or other evidences of debt to be loaned or put into circulation as money. All notes and other securities for the payment of any money or the delivery of any property, made or given to any such association, institution or company, or made or given to secure the payment of any money loaned or discounted by any corporation or its officers, contrary to the provisions of this section shall be void. * * *"

New York General Corporation Law, § 18. Prohibition of banking powers. "No corporation, domestic or foreign, other than a corporation formed under or subject to the banking laws of this state or of the United States, and except as therein provided shall by any implication or construction be deemed to possess the power of carrying on the business of discounting bills, notes or other evidences of debt, of receiving deposits, of buying and selling bills of exchange, or of issuing bills, notes or other evidences of debt for circulation as money, or of engaging in any other form of banking; * * * provided further that engaging in the business of loaning money in this state on bonds, notes or other evidences of indebtedness, secured by deeds of trust or mortgages upon real property or personal property situated in, upon or appurtenant thereto, and/or purchasing of or otherwise acquiring existing bonds, notes or other evidences of indebtedness, deeds of trust or mortgages of or upon such properties, or any interest therein, and the holding of the same, or the endorsing, selling, assigning, transferring or disposing of the same to another corporation, by a domestic business corporation, or by a foreign corporation which has obtained from the secretary of state a certificate authorizing it to transact business in this state, shall not be deemed or construed to violate any of the provisions of the banking law."

2. For an able analysis of the Miller case and the illegal discount problem, see "Illegal 'Discounts' by Non-Banking Corporations in New York" by Homer Kripke, 56 Colum.L.Rev. 1183 (1956). Aspects of the Miller case are also discussed in New York Credit Men's v. Samuel Breiter & Co., 2 Cir., 1958, 253 F.2d 675, and Amherst Factors v. Kochenburger, 1957, 4 A.D.2d 745, 164 N.Y.S.2d 815.

§ 131 (Banking Law) and § 18 (General Corporation Law).[3]

Kunstler argues that his characterization of the transactions as "loans" and the entry of certain items in the Claar books as "interest earned" are determinative against Claar. Other entries, in the Claar books, however, would lead to a different inference. The trial court's findings that the notes transferred to Claar had a prior legal inception; that they were not made simply for the purpose of securing a loan; that Kunstler was selling its accounts receivable, represented by the notes; and that the transactions were not loans are amply supported by substantial proof.

The judgment dismissing the complaint on the merits is affirmed.

3. To each section was added the following:

"The purchase or other acquisition on original issue or subsequent transfer for less than the principal amount thereof or otherwise at a discount of any evidences of indebtedness or other obligations for the payment of money shall not by reason of such discount be or be deemed to be a violation of the provisions of this section."